JAMES BURLESON v. LEWIS DURHAM.

1. STATUTE CONSTRUED.—Sections 3 and 4 of "An act to regulate the disposal of the public lands of the State of Texas," approved August 12, 1870, discussed and construed.

2. SAME.—Section 6, article X, of the Constitution of 1869, construed.

3. LOCATION—SETTLER'S CLAIM.—If at the time of a location upon land on which a settler's claim is made, such settler was not so occupying the land as to give him, under the statute approved August 12, 1870, the right to purchase under its provisions, the fact that a patent was afterwards obtained by such settler will not affect the rights of the locator.

4. SETTLER.—The word "settle," when applied to lands, conveys the idea of permanent inhabitancy. The settler, protected by the preemption laws, was one who actually resided on the land settled.

5. SAME—PRE-EMPTION.—Under said statute, the "settler," "actual settler," "*bona fide* settler," on whom is conferred the privilege of purchasing land of the State, is described in terms similar to those used in the pre-emption laws previously existing; and the statute intends to give such right of purchasing to him only who occupies public land as a residence or with a view to residence.
6. ACTUAL SETTLER—OCCUPANCY.—The actual settler must reside on the land, or occupy it, preparatory to and with the *bona fide* intention of residing thereon. Occupancy for such purpose may be occupancy in good faith; occupancy for other purposes, does not entitle the party to purchase as an actual settler.
7. SAME.—See facts held insufficient evidence of actual settlement under said statute.

ERROR from Gregg. Tried below before the Hon. Z. Norton.

April 19, 1873, Burleson sued Durham, in the District Court of Upshur county, for five hundred and twenty acres of land, claimed under a location and survey made by virtue of donation warrant No. 100, issued by W. S. Hotchkiss to Simon P. Ford, for six hundred and forty acres.

It was alleged that Durham had cut a great quantity of cord wood on the tract, and was about to remove the same. An injunction was obtained, restraining Durham from cutting or removing wood from the tract pending the suit.

Defendant demurred, and pleaded not guilty.

By consent, October, 1873, the venue was changed to Gregg county.

By amendment, plaintiff alleged that he had located said certificate on 23d November, 1870, and had a survey made on 25th November, and had returned the certificate and field-notes to the General Land Office, as required by law; that the defendant claimed one hundred and sixty acres of the said survey, and had obtained a patent therefor, under section 3 of "An act to regulate the disposal of the public lands of the State of Texas," approved August 12, 1870; that at the date of the passage of said act, Durham was not a settler on the said land, and that his affidavit designating said land was made July 12, 1871, long after the inception of

plaintiff's title, and when the land was not subject to appropriation under said act; that defendant had, in fraud of plaintiff's rights, obtained a patent for said one hundred and sixty acres. Plaintiff asked damages for the trespasses by defendant, and that the patent be canceled.

Defendant amending, set up the acquisition of said tract under said act of 12th August, 1870, the grant to him by patent of date June 20, 1873, pleaded in reconvention the value of three hundred cords of wood cut by defendant, and lost by the effect of the injunction, worth twelve hundred dollars, and attorney's fees incurred in defending the suit against the alledged malicious attacks of the plaintiff. By further amendment, defendant pleaded that on August 12, 1870, he occupied said land, and had continued such occupancy up to November 9, 1870, when he caused a survey thereof to be made; made affidavits and proof by supporting witnesses of such occupation July 12, 1871, and obtained the requisite certificate from the surveyer of Upshur county; the surveyor's certificate and field-notes, &c., he caused to be returned to the land office, paying all necessary fees of office and the sum of one dollar per acre; a patent for said land was obtained; that the location by plaintiff was made within twelve weeks after the passage of said act, August 12, 1870, and while the land was occupied by defendant, and so was void.

Plaintiff's evidence showed the location of the Ford certificate on September 17, 1870, survey November 25, 1870, and the return of certificate and field-notes to the General Land Office of the 520 acres described in the petition; transfer from Ford to plaintiff of the certificate.

T. C. Gillespie, for plaintiff, testified that he, as agent, had located the land for Burleson; was present when it was surveyed; conversed with Durham on that day, and he said he did not know the land was public domain; that two or three months later, witness seeing Durham trespassing on the land, cautioned him that the land belonged to Burleson, forbidding him from further trespassing; whereupon Durham promised

to cease, and would satisfy Burleson for the damages done. In May, 1873, witness was on the land, and saw that nearly all the timber—pine as well as oak—had been cut off; that fifty acres of the tract was a very fine pinery, averaging fifteen sawing pines to the acre, and worth fifty cents a pine; that there were from 300 to 500 cords wood cut, worth $3 per cord; that there was no settlement on the land, "as he could see;" that Durham was running a steam saw-mill, one post or corner of which was on the 160 acres now claimed; that there were several huts east of the mill, on another tract, in which the hands running the mill lived.

W. H. Payne, for plaintiff, stated that he also acted as agent for Burleson, and had had several conversations with Durham, in which he admitted that he had cut the timber upon the 160 acres survey; that there was no settlement on the said tract, that he could see; "thinks that a little southwest of the mill was a corn crib, a lot, and small house, used for the hands who labored at the mill; the body of the land lay west of the mill; the principal part of the houses, or all but one, were east of the mill, on another tract;" that Durham's family was residing in the county of Rusk at this time.

Another witness testified that he was county surveyor of Upshur county, and was deputy surveyor when the surveys were made; that he made the surveys for both Burleson and Durham; does not recollect which was surveyed first; refers to the records, supposing them to be correct; that Durham applied to him as surveyor, for a certificate, to the effect "that Durham was a *bona fide* settler upon said tract of land;" and witness refused the certificate, for the reason that he was not satisfied that he (Durham) was a *bona fide* settler upon the land.

Defendant read in evidence, patent to himself as pleaded, for the 160 acres; certified copy from the General Land Office of his settler's claim, of his affidavit, and of two supporting witnesses that he was a *bona fide* settler on said land on May 16, 1870, and had occupied the same up to Novem-

ber 9, 1870, certified to July 19, 1871, by the district clerk, and of field-notes of survey made 9th November, 1870, duly recorded and returned to the land office.

Defendant Durham testified that he took possession of the land about May 16, 1870, and was occupying it on August 12, 1870, and had continuously occupied it ever since; that on 9th November, thereafter, he caused the same to be surveyed, in good faith, with view to purchase the same under the 3d section of said act of 12th August, 1870; that on June 20, 1873, he caused to be paid to the Commissioner of the General Land Office one dollar per acre for said land, upon which his patent issued; that there were 600 cords of wood cut on the tract, worth three dollars per cord, half of it pine, and damaged one half its value; that about one hundred cords were left in the woods and burned,—hence the injunction; that he was hauling wood when enjoined.

"I was asked by Gillespie, if I knew whose land I was upon. I replied, that I supposed it was public land; and if so, it was mine. He then told me the land was Burleson's. I then told him if it turned out to be Burleson's, I would settle the damages."

Witness had on the land a lot, a corn crib, a garden, and a cabin for the use of his hands at the mill. He put some of the improvements on the land in July, 1870. He built a stable on the land in 1871; that he used and occupied the land for mill and other purposes during the year 1870, from May, 1870, to October, 1872, and that during said time that was his place of business; that he never lived upon said land with his family.

The court refused to instruct the jury, as requested by plaintiff, viz:

"That a settler in good faith, in contemplation of law, is where a party goes upon a tract of land with his family, erects a dwelling-house on said land, and occupies said dwelling with an intention of remaining upon the same and making it his home in the future.

"If you believe, from the testimony, that the defendant owned other lands in the State, and resided thereon with his family as a homestead, you must find for the plaintiff."

Verdict for defendant, and for $838 damages, upon which judgment was rendered. A motion for new trial was overruled. Burleson prosecutes his writ of error.

*F. B. Sexton & P. F. Edwards,* for plaintiff in error, cited Trevino *v.* Fernandez, 13 Tex., 630; Cravens *v.* Brooke, 17 Tex., 273; Jennings *v.* DeCordova, 20 Tex., 513; Allen *v.* Harper, 19 Tex., 502; Bledsoe *v.* Cains, 10 Tex., 459; Fowler *v.* Allred, 24 Tex., 185; Parish *v.* Weatherford, 19 Tex., 211; Spier *v.* Laman, 27 Tex., 215; Teel *v.* Huffman, 21 Tex., 781; Kohlhass *v.* Linney, 26 Tex., 333; Green *v.* Biddle, 8 Wheat., 76; Saunders *v.* Wilson, 19 Tex., 194.

*McKay & McCord,* for defendant in error, cited article 10, section 6, Constitution of 1869; Styles *v.* Gray, 10 Tex., 503; Hoofnagle *v.* Anderson, 7 Wheat., 212.

GOULD, ASSOCIATE JUSTICE.—If Durham, at the time Burleson located the land in controversy, was not so occupying it as to give him, under the statute, the right to purchase it of the State, the mere fact that a patent was afterwards improperly issued cannot affect any rights which Burleson acquired by his location. His file and survey, if made on vacant public domain, subject thereto, gave to Burleson an equitable title, secured by all the constitutional guaranties for the protection of private property. (Wright *v.* Hawkins, 28 Tex., 471; Sherwood *v.* Fleming, 25 Tex. Supp., 408.) The case of Styles *v.* Gray, 10 Tex., 503, cited by counsel for defendant in error, in support of the proposition that Burleson could not contest the validity of Durham's patent, appears to have been one in which the party who sought to attack the patent did not show that he had rights which were vested prior to its issuance.

The main question in the case below was as to the nature

of Durham's occupancy, whether it was in fact such as entitled him to purchase the land of the State. His claim was under the 3d and 4th sections of an act to "regulate the disposal of the public lands of the State of Texas," as amended May 16, 1871. (Paschal's Dig., art. 7040, et seq.)

Section 1 of that act gives to every head of a family, who has not a homestead, one hundred and sixty acres of land as a homestead, out of any part of the public domain, upon condition that he or she will select, locate, and occupy the same for three years, and pay the office fees on the same. Single men were allowed eighty acres, upon the same terms and conditions. By section 2, the mode of procuring title by a person who shall occupy any portion of the public domain as a homestead is pointed out. The third and fourth sections are as follows:

"Any person who shall hereafter, in good faith, actually settle upon any part of the public domain, * * and shall occupy any part of such public domain, not exceeding one hundred and sixty acres, and furnish to the Commissioner of the General Land Office satisfactory evidence that he or she has, in good faith, so settled, shall be entitled to purchase the same from the State at the sum of one dollar per acre; and the certificate of the surveyor of the county or district in which the land is situate, that such person is an actual settler on said land, shall be deemed satisfactory evidence thereof. (Paschal's Dig., art. 7047.)

"Any person now occupying any part of the public domain of the State, in good faith, shall have the right to take the necessary steps, at any time within twelve months from the passage of this act, to appropriate the same, or a part thereof, to a homestead, under the first section of this act, or to purchase the same, or a part thereof, under the third section of this act; and no person shall have the right to interfere with said actual settler, by file, location, or survey, by virtue of any land certificate or other land claim whatever, within said prescribed time."

Section 6, article X, of the Constitution then in force is as follows: "The Legislature shall not hereafter grant lands to any person or persons, nor shall any certificate for land be sold at the land office, except to actual settlers upon the same, and in lots not exceeding one hundred and sixty acres."

The statute was evidently framed with reference to this constitutional provision, and was designed to give the privilege of purchasing only to actual settlers. The third section gives this right to "any person who shall hereafter, in good faith, actually settle upon any part of the public domain." It is true, that, in the outset of the fourth section, the person whose rights are protected from interference by file or location is described as "any person now occupying any part of the public domain of the State in good faith;" but, in the latter part of the same section, he is further described as "said actual settler." Durham's rights, under this statute, depended on whether he was or was not an actual settler.

The word "settler," and the expressions "actual settler" and "settled in good faith," are of frequent recurrence in the legislation of Texas. The Constitution of the Republic contained the following provision: "In all cases, the actual settler and occupant of the soil shall be entitled, on locating his land, to inclose his improvements, in preference to all other claims not acquired previous to his settlement." (Gen. Provis., sec. 10.) The land law of 1837, in case of conflicting location, gives the preference "to the oldest occupant and settler." (Paschal's Dig., art. 4526.) The rights of "actual settlers," in those parts of the State where there were colony contracts, were protected by ordinance annexed to the first State Constitution, and by subsequent legislation. (Paschal's Dig., p. 76; and art. 828.) The various pre-emption laws extended privileges to individuals who settled upon and improved a portion of the public domain. (Paschal's Dig., art. 4326, *et seq.*)

The general policy of the Republic and the State has been to encourage immigration, and the settlement of the public

domain, by giving a preference to the actual settler seeking to making of it a home. But it is not believed that it has been the policy to encourage, by special privileges, the mere temporary occupation or use of the public land. The word settle, as applied to lands, conveys the idea of permanent inhabitance. (Webster's Dict.) Certainly, the settler protected by the pre-emption laws was one who actually resided on the land settled. In all of the enactments, from 1853 down to 1871, the pre-emptionist is required to show that he resided upon and cultivated the land for three years. (Paschal's Dig., arts. 4336, 4343, 4358, 7052, 7053.) In the act of November 12, 1866, it is expressed thus: "That he or she is *bona fide* settled upon vacant land, and that he or she has resided upon and cultivated the same for the period of three years next preceding the time of making such proof." (Paschal's Dig., art. 7060.)

The statute which we are considering describes the persons upon whom it confers the privilege of purchasing, in terms similar to those used in the pre-emption laws. It seems to be kindred to those laws in its nature and objects, and we think it intends to give the right of purchasing to him only who occupies the public land as a residence, or with a view to residence. No one else can be said to have actually settled and occupied in good faith. He who has no homestead may, by three years of such occupancy and improvement, secure a donation of 160 acres, or he may, at his option, secure a title by purchase, without waiting for three years. He who has a homestead, but sees fit to remove to public land, may, by purchase, perfect his title before selling his original homestead. Certainly, a settlement may be commenced before the removal of the family to the land and before actual residence thereon. But the actual settler intended by the statute must reside on the land, or occupy preparatory to and with the *bona fide* intention of residing thereon. Occupancy for such a purpose may be occupancy in good faith.

Occupancy for other purposes does not entitle the party to purchase as an actual settler.

The court below refused to give instructions, which were asked, embodying this construction of the statute, and refused a new trial, when the testimony of Durham himself failed to show residence, actual or contemplated. From the evidence, · it appears that Durham had a mill on an adjacent tract of land, one corner of the mill extending on the land in question. He had also, according to his own testimony, on the land, a lot, a corn-crib, a garden, and a cabin, and, afterwards, a stable. He cut much of the timber on the land, and used it for mill purposes, from May, 1870, to October, 1872, and during that time this was his place of business. He does not state that it was, or was ever designed to be, his residence; and there is evidence that his residence was elsewhere. Under the evidence, the court should have given the instructions asked on the subject of residence, and should have granted a new trial. The judgment is accordingly reversed and the cause remanded.

Reversed and remanded.

Chief Justice Roberts did not sit in this case.