### J. B. ATKESON v. FRANK BILGER.

#### No. 209.

1. **State School Land—Settler in Good Faith.**—A purchaser of State school land under the Act of April 1, 1887, built a small house thereon, without any chimney or opening for one, and which remained unoccupied except that a few articles were kept in it for a short time, after which the door was nailed up. The purchaser visited the house a few times within a year and a half, and once plowed a fire guard around the land, but lived on other land, where he was employed. *Held*, that he was not a "settler in good faith" on the land as required by section 7 of said act.

2. **Same — Judicial Forfeiture of Sale not Necessary.**—Section 11 of said Act of April 1, 1887, providing, that "if any purchaser shall fail to reside upon and improve in good faith the land purchased by him, he shall forfeit said land and all payments made thereon to the State, and such land shall again be for sale, as if no such sale and forfeiture had occurred," does not require the State to obtain a judicial forfeiture of the sale in an action against the purchaser, before the land may be sold to a subsequent purchaser.

ERROR from Carson. Tried below before Hon. B. M. BAKER.

*J. M. Thomasson* and *F. M. Brantley*, for plaintiff in error.—1. In the absence of proof that the plaintiff below, Bilger, had ever been an actual bona fide settler in good faith on the land, using and improving the same for the purposes of a home, he was not entitled to a judgment for recovery of the land; and the proof showing that if he had ever settled on the land, he had abandoned such settlement; the judgment should have been in favor of appellant Atkeson. Acts of 1887, 85, sec. 9; King v. Jones, 78 Texas, 285; Luckie v. Watt, 77 Texas, 262; Martin v. McCarty, 74 Texas, 128; Burleson v. Durham, 46 Texas, 152; De Montel v. Speed, 53 Texas, 339.

2. The court below erred in holding as law that the Commissioner of

the General Land Office has no authority of law to cancel an award to State school lands for nonoccupancy as required by law, and that such awards can be cancelled only by courts of competent jurisdiction at the suit of the State.   King v. Jones, 78 Texas, 285; Luckie v. Watt, 77 Texas, 262; The State v. Opperman, 74 Texas, 136; Metzler v. Johnson, 1 Texas Civ. App., 137.

*Frank Lester*, for defendant in error.—A forfeiture of the sale made by the State, for want of a compliance with the subsequent conditions as to actual settlement, could only be declared upon a judicial ascertainment of the facts in an action brought by the State for that purpose. Const., art. 1, sec. 13; Nobles v. Cattle Co., 69 Texas, 434; Perez v. Canales, 69 Texas, 674; Canales v. Perez, 65 Texas, 291; Martin v. Brown, 62 Texas, 467; Cattle Co. v. Bruce, 78 Texas, 269.

TARLTON, CHIEF JUSTICE.—Frank Bilger, on April 24, 1891, in this action of trespass to try title, brought by him September 26, 1890, recovered from J. B. Atkeson judgment for "section number 24 in block B4" of the State school land in Carson County.

The claim of the plaintiff is founded upon a purchase from one W. D. Rippey, who, it is alleged, acquired a right to the land by a compliance with the provisions of the Act of April 1, 1887, having reference to the sale of land belonging to the public free schools.

The claim of the defendant and plaintiff in error, Atkeson, is founded upon the contention, that neither the plaintiff, Bilger, nor his vendor, Rippey, ever "in good faith settled" upon the land as prescribed by the act invoked by them; that if in fact such settlement was made by the plaintiff, he wholly abandoned the land; and that on February 17, 1890, while it was vacant and unoccupied public domain, he, the defendant Atkeson, settled upon it in good faith, and in all things complied with the requirements of the act referred to.

The learned trial judge rests his judgment upon the following conclusions of law and fact found by him:

"1.   When under the provisions of the Act of April 1, 1887, land belonging to the public free schools has been awarded by the Commissioner of the General Land Office to an actual settler, said settler having complied with the law to secure said award, the said Commissioner of the General Land Office has no authority to declare the purchase forfeited on proof of the purchaser's nonoccupancy filed in his office, so long as the purchaser continues to pay the interest as required by law.

"2.   No such forfeiture can be declared except by a court of competent jurisdiction.

"3.   When such land has been so awarded, a forfeiture of the purchase can only be declared by a court of competent jurisdiction at the suit of

the State of Texas; that is, on the ground that the purchaser has abandoned the land or failed to continue his occupancy of it.

" 4. When such land so awarded has been applied for by another person subsequently settling thereon, and the award has been cancelled by the Commissioner of the General Land Office, and the land awarded to the second applicant by said Commissioner on proof filed of the first settler's failure to continue occupancy, the superior right remains with him who obtained the first award, and in an action of trespass to try title he may recover.

" 5. I find that W. D. Rippey became an actual settler on the land in controversy, the same being public free school land, on the 10th day of February, 1888, and that he on said day applied for the purchase of the same to the Commissioner of the General Land Office, and that said Commissioner awarded the same to him on the 14th day of February following.

" 6. Said Rippey complied with all the requirements of law, as to filing application, obligation to the State, payment of first payment of purchase money, and continued payment of annual interest as it has become due, and the provisions of said law of April 1, 1887, in the said award to Rippey were complied with.

" 7. Said Rippey occupied said land about ten days, and he sold it to plaintiff, Bilger, by deed dated April 3, 1888, which said deed was filed in the General Land Office December 19, 1889.

" 8. Plaintiff, Bilger, filed in said land office his application to purchase the land in controversy, and the obligation to the State prescribed by law, on the 30th of October, 1890.

" 9. On purchasing said land from Rippey, Bilger erected thereon a small house, and at times kept bedding and cooking utensils therein, and broke and caused to be broken about twelve acres of sod land, and subsequently plowed a fire guard around the land; but nearly his entire time was spent working away from and living off the land, and the bedding and cooking vessels remained in the house but a short while, and the house was soon abandoned and the door nailed up, and he has not occupied the land at all since a few months after his purchase from Rippey, and has not attempted to do so, except on one occasion, after Atkeson took possession, he went on it prepared to plant wheat, which he did not do.

" 10. The defendant, J. B. Atkeson, made his application to the Commissioner of the General Land Office to purchase the land in controversy on the 20th day of November, 1889, and he was on that day, and has remained ever since, an actual settler thereon, residing continuously upon it during the whole period; his application complied in all things with the law, and was received in the Land Office November 25, 1889.

" 11. Said land was awarded to Atkeson by the Commissioner of the Land Office on said application on February 17, 1890, and he has kept

up all the interest payments required by law, and with said application he filed the obligation to the State prescribed by the statute.

"12. Said Atkeson has built a house on the land, and has made various other improvements thereon."

*Opinion.*—Under our interpretation of the statute invoked by the defendant in error, Bilger, only such persons come within its provisions as are settlers in good faith on the land about which it was enacted. Metzler v. Johnson, 1 Texas Civ. App., 137.

It becomes, therefore, necessary to inquire whether, in this instance, W. D. Rippey was such a settler.

To affect him with this character, the evidence relied upon (save such as may consist in his application to the Commissioner of the Land Office and the recitals in the accompanying affidavit of settlement made in accordance with section 9 of the act) is to the effect, that "on February 10, 1888, he filed on the land; that on that day he and his wife were living in a tent on the land; that he took his meals sometimes at the section house and sometimes at the tent, and stayed at the section house in bad weather; that he stayed on this section about ten days, and sold it to Frank Bilger, to whom he made a deed on April 3, 1888; that he did not know that he ever stayed all night at the tent."

We do not think that these facts show that "permanent inhabitancy" necessary to constitute actual settlement in good faith. Burleson v. Durham, 46 Texas, 152; Baker v. Millman, 77 Texas, 46.

If, however, the foregoing conclusion be erroneous, we think it quite beyond question that the plaintiff, Bilger, can not be regarded in the light of a settler in good faith. He himself, who should best know the character of his occupancy, abstained from testifying. He relied quite exclusively upon the testimony of his vendor, Rippey, to make out his case. The latter's statement on this subject is as follows: "I know that Frank Bilger lived on this section. He went on the section and stayed about a month. I know that he carried his goods down there and kept them there awhile; that he worked on the section a good deal—some in every month. He worked for me the most of the time, and stayed at my house; was my overseer. He did some plowing and other work on this land, and put up a house 14x16 feet. The plaintiff had a cooking stove and some bedding in the house. * * * I was not in this country more than half of that month that Bilger was on this section. I saw him there only twice during that month. I stated that Bilger lived on the section about a year and a half. I do not know that I saw him there more than five times during the year and a half. He was at my house the most of the time. He kept his bedding and camp outfit in his house on the section for awhile, but some one broke into his house and stole some of his goods, and then he brought them away. I don't know who broke

into the house, whether it was Bilger or not.  I do not know that any of his goods were stolen.  I know that he carried away from my house three pairs of blankets, and only brought back one pair.  I do not know what became of the other two.  After he brought his goods away from the house he would go down to his section about once a month and would take his camp outfit with him.  I do not know whether he went to the section, or where he went.  I know he was not at my house.  Sometimes he went once a month, and sometimes he did not go so often.  If he was busy at my place he did not go so often."

Witnesses for the defendant, who had lived in the immediate neighborhood of the section since about April, 1889, and who were familiar with it, testified that no one lived on it until its occupancy by the defendant; that the plaintiff, Bilger, was never seen on it but twice; once in October, 1889, when he plowed a fire guard around it, and once when he came to plant wheat in August, 1890, long after its occupancy by the defendant.  The small house upon the land was during all this time unoccupied; it was without a window, or a chimney or a flue or a place to let out smoke, and its contents consisted of a sack and a piece of timber.

The foregoing testimony of the witness Rippey, vague and self-conflicting as it appears to us, fails to show that the plaintiff was a bona fide settler on the section in controversy.  It tends, on the contrary, to show that the plaintiff was living elsewhere, at the house of Rippey, employed as his overseer.  Baker v. Millman, 77 Texas, 46.

The foregoing testimony of the defendant's witnesses, on the other hand, induces the conclusion, that if the land was ever occupied by the plaintiff it had been abandoned by him.  The small house described by these witnesses was not suggestive of occupancy by "civilized man." Meanwhile, after this abandonment, the evidence further shows, that on November 18, 1889, the defendant Atkeson took possession of the land as an actual settler in good faith; that after such occupancy he improved the property as a home, building a residence upon it, planting an orchard, constructing a fence of three miles, and paying all dues as prescribed by the Act of 1887.

We do not concur with the learned trial judge, that after such abandonment by Bilger, he should yet be held, if a settler in good faith in the first instance, entitled to the land against a subsequent purchaser such as the defendant, until the State, in an action brought by it, shall have obtained against him a decree of forfeiture.

The view entertained by the trial court does not, we think, comport with the language of the Act of 1887, section 11, wherein it is provided, that "if any purchaser shall fail to reside upon and improve in good faith the land purchased by him, he shall forfeit said land and all payments made thereon to the State; and such land shall be again for sale, as if no such sale and forfeiture had occurred."  Nor does it comport

with the intent of the Legislature in adopting the enactment, the evident purpose of which was not only to secure the sale of the public free school lands, but the settlement of the unoccupied public domain. Such settlement would be greatly retarded, if in every instance of failure to reside upon and improve by a purchaser, this fact would have to be judicially ascertained by the State, before the land would be open to settlement to a second purchaser, between whom and the former purchaser the issue of failure and abandonment could be fully and fairly determined. Metzler v. Johnson, supra.

We conclude for these reasons, an expression of which is called for by the several assignments of error, that the defendant should have prevailed in the trial court; and as he prays for affirmative relief recognizing his claim as against the plaintiff, we here reverse and render the judgment, that the plaintiff's claim be held for naught, and that the defendant, Atkeson, recover of him the land in controversy.

*Reversed and rendered.*

Delivered September 20, 1893.