## JAMES POTTS *et al.*

### *v.*

## THOMAS F. DAVENPORT *et al.*

79 455
30a 475

79 455
34a 536

79 455
149 662

79 455
162 286

79 455
197 4 47

79 455
200 407

1. HOMESTEAD—*of the ownership necessary.* A tenant by the curtesy, having a life estate subject to levy and sale on execution, is an owner within the meaning of the statute exempting homesteads from forced sale.

2. SAME—*meaning of the words "occupied as a residence."* The term, "occupied as a residence," in the statute exempting homesteads, means that the premises shall be the home of the party claiming a homestead right. Temporary absence by the party and his family, without acquiring another home, is not an abandonment of the right.

3. SAME—*whether abandoned.* Whether premises occupied by a debtor and his family when he has removed from them, and after the recovery of a judgment against him, returned to the same, was his home during his absence, is a question of fact to be determined by the jury from all the circumstances of the case.

4. Where a debtor left his homestead in 1870, to go elsewhere to better his fortune, leasing the same, but reserving two rooms, in which he left

a portion of his household goods and valuables, expressing an intention to return if the climate of the place to which he went, and other matters, did not suit him, and rented a house by the month, and never exercised any political privileges in the latter place, and returned in 1873, a judgment having been recovered against him in 1871, upon which the homestead was sold: *Held*, that the party, by his temporary absence, under the circumstances, had not lost his homestead right, as in favor of the purchaser under the judgment.

5. Descents—*right under certificate of purchase.* Where a party holding a certificate of the purchase of land sold under execution, dies before taking out a deed, in the absence of an express devise to his executors, they will succeed to no right to the land, and have no right to demand a deed, but the sheriff's deed should be made to the party's heirs at law.

Appeal from the Circuit Court of Henry county; the Hon. George W. Pleasants, Judge, presiding.

Mr. Geo. W. Shaw, for the appellants.

Mr. H. Bigelow, for the appellees.

Mr. Justice Breese delivered the opinion of the Court:

This was ejectment, in the Henry circuit court, by James Potts and William Evans against Thomas F., Elizabeth, and Charles Davenport, to recover possession of a certain tract of land described in the declaration, and occupied by the defendants.

The general issue was pleaded, and a trial by jury, who found for the defendants. A motion for a new trial was denied, and judgment rendered against the plaintiffs for costs, to reverse which they appeal.

It is not denied that, prior to and up to the 7th of April, 1871, and to the time of trial, and at all times since the 19th September, 1854, the legal title to the premises was in Elizabeth Davenport, by deed of conveyance of that date from one Elisha Atwater, she, at that time, and from June 22, 1848, being the wife of Thomas F. Davenport, and who had lived together as husband and wife, in this State, from and after said date.

At the February term, 1871, of the Henry circuit court, one John Karns recovered a judgment against Thomas F. Davenport for a large sum of money, more than nine thousand dollars, on which a *fi. fa.* issued on the 13th of April of that year, which was returned *nihil.* On the 20th of June, 1872, an *alias fi. fa.* was issued, which was levied on the premises described in the declaration, and a sale thereof was made by the sheriff on the 4th of December following, to the judgment creditor, John Karns, for two thousand five hundred dollars, and a certificate of purchase duly issued to him.

Karns died in Pennsylvania, having made his last will and testament, by which he appointed the plaintiffs, Potts and Evans, his executors, and, on proof of the will, letters testamentary were issued to them, and to them the sheriff of Henry county, on the 18th of May, 1874, executed a deed, and this was the plaintiffs' title.

On the part of the defendant Thomas F. Davenport, it was proved he took possession, with his wife, of the premises in 1858, and resided thereon with his family, having three children living, the issue of said marriage, until the fall of 1870, having no other place which he called his home. Being much embarrassed financially, he, at this date, left the place, with his family, to better his fortunes by embarking in business in Chicago, renting the place for one year, but reserving two rooms, and expressing at the time his intention to return, if the climate, and other matters, did not suit him, his great object being to embark in some business from the proceeds of which he might be enabled to pay his debts. He left a portion of his household goods and valuables in the house, where they remained until his return, in November, 1873, when he, with his family, resumed possession, and have occupied the same as a homestead ever since. In Chicago he rented a house from month to month, and exercised no political privileges in that city or county.

On these, the principal facts, the question is, was the homestead abandoned at the time the lien accrued, which was on

the 7th of April, 1871, and so abandoned as to preclude a return to it?

The question of abandonment of a homestead has been frequently discussed in this court, and decided. The cases are referred to by counsel. Appellants contend, as the premises were not actually occupied by the debtor on the 7th of April, 1871, when the lien attached, there was no homestead right.

The language of the statute is, the lot of ground and the buildings thereon occupied as a residence, and owned by the debtor, being a householder and having a family. Who should be deemed an "owner," within the meaning of this statute, was discussed and decided in *Deere* v. *Chapman,* 25 Ill. 610, this court holding a tenant for life was such owner. Hence, the party was tenant by the curtesy, an estate subject to levy and sale on execution. The plaintiffs seek, by this action, to be put in possession of this estate, and we must hold the ownership was in the tenant by the curtesy.

Being the owner, did he occupy these premises as a residence, on the 7th of April, 1871?

Appellants claim that the strictest meaning should be given to this term, "residence." They insist, as Davenport, on that day, lived at Chicago, with his family, doing business there, he could not be a resident, at the same time, on these premises. What does the statute mean? It means, we think, by using the term, "occupied as a residence," that the premises should be the home of the party claiming a homestead right.

The proof is abundant here, that Davenport and his family had no other home than these premises in Henry county. Did his temporary absence in Chicago, for a specific purpose, deprive him of this right, it being shown he had, at the time and all the time, the intention to return? This expressed intention, leaving a portion of his household goods and valuables on the premises, and reserving to himself two rooms of the house, go to show a determination to retain his home, and not to abandon.

In *Kitchell* v. *Burgwin and Wife*, 21 Ill. 40, it was said, it was not necessary, when a home, residence or settlement has once been acquired on lands, that there should be continuous, actual occupancy to secure the land from forced sale. If the head of the family should leave, in search of another home, the first would remain until another should be acquired; and if a husband remove his wife and family into another county, and, without providing them a home, abandon his wife, she might again resume possession of the homestead; and, in *Walters, Admx.* v. *The People, etc.* ib. 178, it was said, the requirement of occupancy could be fulfilled by means other than actual residence. The doctrine of this court in later cases may have modified this ruling, but it is apparent, from all of them, the homestead right is not lost by a temporary absence, accompanied by an expressed intention to return if the purpose for leaving it be not accomplished.

The case of *Smith* v. *The People*, 44 Ill. 16, is strong to this effect. There, the party had abandoned his residence in this State, and taken one in the State of Tennessee, with his family, and there entering into the business of his profession as an attorney at law. He left this State with the expressed intention of returning, should his hopes be fruitless in Tennessee. He did return, after an absence of some months, with his family, and it was held he had not lost his residence here.

In the later case of *Hayes* v. *Hayes*, Sept. T. 1874, which was a question of succession to personal property, it appeared the deceased, under whom the parties claimed, had resided with his wife at Rock Island, possessed of real and personal property there; that his wife went to Washington City on a visit to her relatives there, and he to Iowa, to fill a pulpit temporarily. He remained in Iowa about two years, preaching at different places, not as a settled pastor or on a salary; purchased and sold real estate there, and voted, being allowed so to do by the laws of that State, he all the time expressing an intention of resuming his residence in Rock Island. He made a visit to his wife in Washington, and, on his return,

was taken sick at Rock Island, and there died.   He was held not to have lost his domicil at Rock Island, and that county was held to be his home.

In the sense of the statute, we are inclined to hold the residence there named means nothing more than that the lot and premises shall be the home of the party, and whether it is so, is a question of fact and intention, under all the circumstances, for the jury.   It is safe to say, we think, that Thomas F. Davenport and his family, from 1858 onward to the trial of this cause, had no other permanent residence or home than this farm, and his homestead right was well proved.   The instructions are in harmony with these views.

There are no cross-errors assigned, but it will be proper to suggest, in the absence of an express devise to the executors by the will of Karns, they did not, as such executors, succeed to any right to this land, nor to demand a deed therefor from the sheriff.   The deed should have been made to the heirs or devisees of Karns, and not to his executors.

For the reasons given, the judgment is affirmed.

*Judgment affirmed.*