BESSIE ANDRUS v. HANNAH J. DAVIS.

No. 1464. Decided November 13, 1905.

**School Land—Sale—Settlement—Abandonment.**

Where school land had been awarded to a purchaser as an actual settler and after making settlement and improvements she left it for the space of eight months to attend the state normal school in a distant county, such absence supported a finding that she had abandoned the occupancy and forfeited her right to the land as against a subsequent applicant to purchase it. (P. 310.)

Certificate of dissent from the Court of Civil Appeals for the Second District, in an appeal from Howard County.

The opinions, majority and dissenting, in the Court of Civil Appeals were as follows:

SPEER, ASSOCIATE JUSTICE.—Appellant instituted this suit in trespass to try title to recover from appellee four sections of school land situated in Dawson County. Upon a trial before the district judge judgment was entered for the defendant in the action.

The lands in controversy were originally awarded to appellant, and the regularity of this award is in nowise called in question. She continued to reside upon these lands as the law requires until about the 16th day of September, 1903, at which time she left them for the purpose of attending the State Normal School, at Denton, Texas. On the 22d day of December, 1903, she returned to the land and remained there one or two days, and again went to the state normal, where she remained as a student in that institution until the 23d day of May, 1904. On her final return from the state normal she again took up her residence on the home section, and resided there to the time of the trial of this case. Upon affidavits attacking her occupancy of the land, the land commissioner of the state forfeited the sale to her on June 20, 1904. Upon these facts the trial court found that Miss Andrus' absence from the land from September 16, 1903, to May 26, 1904, returning only once for not exceeding two days, was a failure upon her part to reside upon the lands as contemplated by the law, and such failure forfeited the lands to the state and placed the same again upon the market for sale. We are of the opinion that this conclusion is correct.

In section 3 of the Act of 1901, relative to the sale and lease of public lands, it is provided: "If any purchaser shall fail to reside upon and improve in good faith the land purchased by him as required by law, he shall forfeit said land and all payments made thereon to the state to the same extent as for nonpayment of interest, and such land shall be again upon the market as if no such sale and forfeiture had occurred, and all forfeitures for nonoccupancy shall have the effect of placing the land upon the market without any action whatever on the part of the commissioner of the general land office." This we take to mean that the character of settlement and occupancy required of a purchaser in the first place, viz., an actual residence or occupancy rather than a virtual

or constructive one, must be continuous for the prescribed term of three years. The decisions defining residence, within the meaning of the venue statutes, and those defining abandonment, when homestead rights are called in question, can have little or no bearing whatever upon the issue to be determined here. The question is simply one of whether or not appellant's absence from the land while attending school in a distant county for the time shown, was a failure to reside upon the land purchased by her as required by law. We think it was. While it can not be. denied that one may actually reside upon the land and yet be occasionally temporarily absent therefrom, yet taking into consideration the length of the absence, its purpose, and the necessary residence at a place other than on the lands in controversy, it can not be held that appellant was actually residing during this time upon the lands purchased from the state. If an absence at school for eight months may be allowed, we see no reason why a similar absence for three years, should not also be allowed. In this latter case, then, we would have the anomaly of an actual settler making proof of three years' actual occupancy of his land, when in truth he had been absent therefrom and actually residing in another place during the whole time. This we think would be entirely to defeat the policy of the law, which clearly contemplates the actual occupancy of public land sold to settlers thereon. If the forfeiture in such case be technically for abandonment, abandonment in such connection is not to be tested by the rules defining that term generally, but by the sense in which it was intended to be used as gathered from the context of the act. We find the ground of forfeiture there stated, to be a failure to reside upon the land. In other words, it is not a question of intention wholly but one of actual residence. Mann v. Greer, 77 S. W. Rep., 34.

The judgment is affirmed.

Conner, Ch. J., dissenting.

Delivered June 10, 1905.


CONNER, Chief Justice.—I have been unable to concur with the conclusion reached by the majority. In addition to the facts stated by them, I desire to add that the undisputed evidence shows that Bessie Andrus duly applied for the land in controversy as an actual settler, on October 9, 1892. From this date she continued to reside upon the land as stated by the majority, until September 16, 1903, when she left for Denton, as is also stated by the majority. She had built on her home section a house, had canvassed and papered it, had therein bed, cot, clothes, provisions, pictures, stove, and all things necessary for her to live therein, and it is as certain as evidence can make it that she had no purpose of abandoning the land as her home when she left it for Denton. On the contrary, her unmistakable intent was to acquire knowledge, and that her contemplated absence should be temporary only, having full purpose to return to her house and land as her home. She never entertained any other purpose, and I can not think the absence shown with such purpose other than a temporary one or that it constitutes a failure "to reside upon and in good faith improve the land purchased" within the meaning of the law invoked as supporting the forfeiture de-

clared in this case. No decision precisely in point has been found in the hurried examination that I have been enabled to make, but it is a familiar principle of the law that forfeitures are to be strictly construed. A reference to lexicons and decisions will show that the terms occupancy, possession and residence are often used in a synonymic sense, and I have failed to find a single case where a homestead right, or residence, or an acquired possession of land, has been held to have been lost because of a temporary absence of any kind. A few illustrations may not be amiss, thus: "The term 'occupied as a residence' as used in a statute exempting homesteads so occupied from seizure and sale on judicial process, means that the premises shall be the home of the party claiming a homestead right therein, and this implies a permanent occupation; and hence mere temporary absence by the householder and his family, without acquiring another home, does not constitute an abandonment of the right." Potts v. Davenport, 79 Ill., 455. "A house used as a place of residence by a man and his family is an occupied dwelling house, within the meaning of Pen. Code, sec. 138, though every member of the family may be temporarily absent at a time when the house is maliciously and wilfully burned." Meeks v. State, 27 S. E. Rep., 679. "The word 'occupy' is defined by the Century Dictionary as 'to take possession of; seize; take up; employ; to take possession of and retain or keep; enter upon the possession and use of; hold and use; especially to take possession of a place as a place of residence, or, in warfare, a town or country, and to become established in it; to be in possession or occupation; hold possession; to be an occupant; to have possession and use.'" Lyons v. Andry, 31 Southern Rep., 38. "'To occupy' means 'to hold in possession; to hold or keep for use, as to occupy an apartment.'" Missionary Soc. of M. E. Church v. Dalles City, 2 Sup. Ct., 672, 107 U. S., 336, 27 L. Ed., 545, citing Webst. Dict. The term 'occupy,' as used in the homestead statutes, does not require continuous actual possession. "What is the meaning of 'occupy,' or 'continuing to occupy,' within the meaning of the legislature? In common parlance, and in reference to housekeeping, we at once attach the idea of actual residence, dwelling, abiding on; the place of bed, board and washing—three acts of constant recurrence to supply the necessaries of life and renew the physical man. This is the second sense given it by Webster; but it is used also in the sense of possession generally; and Webster also uses the word 'possess' in the same variety of senses, in the main, as is given to 'occupy' or 'occupancy.' Turn to Bouv. Law Dict., 240, 'Occupancy,' 336, 'Possess,' and we find words used and understood in the same great variety of senses. If a man go abroad, animo revertendi, and reside for temporary purposes of trade or business, he will not lose his domicile; and yet we know that the party's domicile follows his actual residence. So it is with foreign ministers and diplomatic agents. In contemplation of law, they continue to occupy their mansions or dwellings in their own country, though actually resident abroad for years. A person may have a constructive possession or occupancy, and he may have a possessio pedis by tenants or actual inclosures, and, in contemplation and within the meaning of the law, he may have actual possession,

actual occupation, without residence." Tumlinson v. Swinney, 22 Ark., 400.

So in Texas, long absence from the homestead is but a circumstance tending to show abandonment—it is not conclusive. Sanders v. Sheran, 66 Texas, 657; McMillan v. Warner, 38 Texas, 411.

In the case of Henderson v. Ford, 46 Texas, 628, it was held that the homestead right of one Bohanan had not been lost merely because of Bohanan's temporary absence for several years while serving as a confederate soldier, the court saying: "Unquestionably, it can not be held that the mere fact of one's absence from his home, in the discharge of public duty as a soldier, will operate as an abandonment or forfeiture of his homestead rights." In Aultman & Co. v. Allen, 12 Texas Civ. App., 227, in which writ of error was refused, it was held that the temporary absence of Allen and wife from their homestead about three years, for the purpose of educating their children, did not operate as a forfeiture of the homestead right.

It seems difficult to ascribe a more stringent meaning to the terms "continued occupancy" than to the words "actual settlement," as used in our school land law; and it has been many times held that a mere temporary absence will not deprive a purchaser of the character of an actual settler. Thus, in the leading case of Borchers v. Mead, 43 S. W. Rep., 300, the evidence, which is quoted in the opinion, showed that Mead made but inconsiderable and primitive preparation for actual, continuous occupancy; remained on the land one night, whereupon he left for Clarendon, a number of miles distant, and made his application to purchase, thereafter continuing his business of breaking horses at and near Clarendon. After his application he returned to the land an indefinite number of times, and testified that he had "never been on the land more than a day and night at any one time." It was nevertheless finally held that the evidence sustained his contention of actual settlement. To the same effect on this question is the case of Taylor v. Lewis, 85 S. W. Rep., 1011. Other like cases might be cited, but I think these sufficient to illustrate the thought.

The legislature itself, on several occasions, has indicated a solicitude on the subject—has specially provided that certain absences, that might otherwise be construed as constituting an abandonment, should not be ground for forfeiture because of non-occupancy. For instance, in the Act of 1895, sec. 9, it was provided in substance that a purchaser of school land, who had improved it as a home, and who had been forced to abandon it because of drouth, might, in the manner pointed out, at any time within six months after the act took effect reoccupy the land without hazard of forfeiture, and without such absence being deducted from the three years' occupancy required by law. The same act, sec. 11, provided that all necessary and temporary absence of not more than six months in any one year, for the purpose of earning money with which to pay for the land, or for the purpose of schooling children, should not work a forfeiture. The Act of 1901, sec. 3, provides that the land of a purchaser forced to yield possession by proper judicial process, or temporarily, because of a well-grounded fear of death

or serious bodily injury, shall not be subject to the forfeiture declared by the act.

The foregoing Texas decisions and statutes are cited as merely showing the trend of judicial and legislative mind. Therefrom I do not think it is to be said that a temporary absence for causes other than those mentioned in the legislative acts requires judicial declaration of forfeiture. No one, I imagine, will so construe our law on the subject to prevent mere temporary absence necessitated by bodily injuries, sickness, the purchase of material for improvement or for the necessaries of life. Such a construction would be unreasonable. If the principle of a temporary absence for ·causes not named by statute be admitted at all, as it surely must be, then it seems to me that the question in all cases is merely whether the absence in a given case is purely temporary, and not of such unreasonable duration as to manifest abandonment, or be violative of the spirit of our law requiring continued occupancy. It may be that an absence of three or more years for the purpose of obtaining an education should be so held; but it will be time enough to decide that question when it is presented. The case under consideration is one where a young woman, actuated by a laudable motive to increase her educational capacity, absented herself but a few months at a time, with full intent to return to and continuously occupy her home. I can not think such temporary absence with such purpose unreasonable, or that it violates the spirit of the law requiring actual settlement and continued .occupancy of school lands. The policy of the law to secure and retain actual occupants of school lands is freely admitted, and I concur therewith; but the force of the reason therefor has been constantly decreasing with the efflux of time. The portion of our state in which said lands were so largely located is no longer an unsettled waste, occupied by the untamed buffalo, coyote and prairie dog. Modern cities and towns are numerous; churches and schoolhouses dot the landscape. Telegraph, telephone and railway lines thread the territory, and small ranches, cultivated farms and houses of a happy, prosperous people abound. Shall it therefore be said that the policy of the law mentioned has in the case before us been so far contravened by Bessie Andrus as to require the divestiture of valuable rights secured by her under the laws of Texas? I think not. As before stated, it is absolutely undisputed in the evidence that Bessie Andrus did not intend to abandon the land secured by her as a home. Her clearly established purpose was but to temporarily absent herself in order to acquire or add to her education. No policy of the State of Texas has been more clearly manifested than that of encouraging the education of her people. It has been stated that the people of Texas made the foremost declaration in behalf of education ever made by any people in the history of the world. In their Declaration of Independence of March 2, 1836, they declared that the failure of Mexico to provide for the education of their children, when possessed of boundless resources in the public domain, was ground for revolution. The same spirit breathes from every constitution of Texas since that time. Every legislature since has been swift-footed in the attainment of the object.

Pursuant to this general policy, vast sums have been accumulated as a permanent free school fund; large amounts are yearly gathered in the way of taxes therefor, and the very land in controversy was dedicated to the cause. Bessie Andrus was but doing what our lawgivers have ever encouraged—but fulfilling in her person the oldest, most conspicuous and beneficial of all our public policies, and her act in so doing, in my judgment, ought not to be condemned by the imposition of forfeiture on the ground that it conflicts with the less important policy of maintaining the actual occupancy of our school lands.

It is also undisputed in the evidence that the sale and award to Bessie Andrus was in good standing upon the books of the general land office at the date of her final return from Denton, and that the claim of appellee is based wholly upon a settlement made about that time, applications made on the same day, and the subsequent action of the commissioner in forfeiting the award to appellant and in awarding to appellee. I attach but little, if any, importance to the act of the commissioner in declaring the forfeiture. He is given no power by the Act of 1901 to declare a forfeiture because of non-occupancy, and the forfeiture rests upon ex parte affidavits instigated in appellee's interest.

In my opinion, the judgment should be reversed and here rendered for appellant.

Delivered June 10, 1905.

*John B. Littler* and *Ellis Douthit,* for appellant.—The absence of Miss Andrus from the section 18, of the land in controversy, from September 16, 1903, to March 26, 1904, returning about two days during that time, was lawful with the intention of returning, and did not constitute in law an abandonment of the land. Russell v. Randolph, 11 Texas, 463; Clack v. Hart, 26 Texas Civ. App., 47; Calvert v. Ramsey, 59 Texas, 495; Witcher v. Wiles, et al., 33 Texas Civ. App., 69; Richardson v. McNulty, 24 Cal., 339; Judson v. Maloy, 40 Cal., 299; Hickman v. Link, 22 S. W., 472.

It is contemplated by the law that a failure to reside on school land should be sufficient to constitute an abandonment in order to work a forfeiture of the title. Sec. 3, Act 1901, p. 294, Act 27th Leg.; Clack v. Hart, 26 Texas Civ. App., 47; Bates v. Batton, 96 Texas, 279; Witcher v. Wiles, 33 Texas Civ. App., 69; Cyc. Title Abandonment.

The decisions of the courts upon the subject of failure to reside upon school land, treat the question as one of abandonment. Same authorities.

Before there is an abandonment of land there must be an actual relinquishment of possession without any intention of returning. J. B. Watkins Land Mortgage Co. v. Phillips, 38 S. W., 270; Archibald v. Jacobs, 6 S. W., 178; and authorities under first proposition.

The word "reside," as used in our law regulating the sale and purchase of state school land, has and is intended to have the same meaning as the word "domicile." Sec. 2, Act 1901, p. 293, 27th Leg. (affidavit required); Brown v. Boulden, 18 Texas, 434; Hardy v. DeLeon, 5 Texas, 235; Ex parte Blumer, 27 Texas, 735.

A person attending college for the purpose of securing an education,

with the intention of leaving after the term, does not lose his home domicile. Fry's Election, 71 Pa., 302; Sanders v. Getchell, 76 Me., 158.

Domicile once acquired is presumed to continue until a new one is shown to have been gained, and no length of temporary absence from one's domicile, when the purpose is to return to it, operates as a change of domicile. Benavides v. Gussett, 8 Texas Civ. App., 198; McIntyre v. Chappell, 4 Texas, 197; State v. Barrow, 14 Texas, 181; Cross v. Everts, 28 Texas, 533; Mitchell v. U. S., 21 Wall., 350.

We earnestly submit to this honorable court that there is no good reason why the word "abandonment," as used by the legislature in the Act of 1901, should have a different meaning from its ordinarily accepted meaning; and we say, without fear of successful contradiction, that there is no reputable lexicon that will give the word such a meaning that Miss Andrus' acts will fall within its meaning, as they are disclosed by the record in this case.

And we submit, further, that the construction placed upon these words and phrases is contrary to the well-known rule of construction, that when either of two constructions can be given a law, and one of them involves a forfeiture, the other is to be preferred. (Farmers' National Bank v. Dearing, 91 U. S., 29.)

In addition to the authorities stated in our brief, we call the honorable court's attention to the case of Town of Salem v. Town of Lyme, 29 Conn., 74.

*Cunningham & Dale,* for appellee.—Appellant's absence from the land from September 16, 1903, to May 26, 1904, returning only once for not exceeding two days, was a failure upon her part to reside upon the land as contemplated by the law, and such failure forfeited the lands to the state, and placed same again upon the market for sale. Art. 4218L, Rev. Stat.; sec. 3, Act 1901, p. 294; art. 4218J, Rev. Stat.; Rules and Regulations of Land Commissioner, pp. 10, 11; Hardman v. Crawford, 2 Texas Court Reporter, 917; Singleton v. Wright, 54 S. W. Rep., 249; Bates v. Bratton, 6 Texas Court Rep., 204.

Absence from school land for a greater period than six months in any one year, is in law an abandonment of said land. Same authorities, and also the following: O'Neal v. Manning, 48 Texas, 403; Horne v. Gambrell, White & Wilson, Civil Cases, vol. 1, sec. 998; Am. & Eng. Encyc. of Law, vol. 26, p. 289.

Every purchaser must live on his home tract of school land for three consecutive years next succeeding the date of filing his application with the county clerk; but he may be temporarily absent from his home tract not exceeding six months in any one year; that is, the sum of his absence in any one year must not exceed six months. Such absence can be for two purposes only: (1) To earn money with which to pay for the land; (2) For the purpose of the purchaser schooling his children. Rev. Stat., arts. 4218C, 4218L; Singleton v. Wright, 54 S. W., 249; Willoughby v. Townsend, 18 Texas Civil Appeals, 724; Rules and Regulations of the School Land Laws of Texas, adopted by the Land Commissioner, p. 11.

The word "reside," as used in our law relating to the sale and pur-

chase of school land, has the meaning of "actual" residence upon said land. Hardman v. Crawford, 95 Texas, 193; Lewis v. Scharbauer, 8 Texas Court Reporter, 268; Busk v. Lowrie, 86 Texas, 128; Baker v. Millman, 77 Texas, 46; Lee v. Green, 58 S. W. Rep., 196; Jones v. Bourbonnais, 1 Texas Court Rep., 738.

Under our law regulating the sale and purchase of school land, the purchaser must continue to be an actual settler after the award to him of the land, and such continued settlement must be actual and not constructive. Davis v. McCauley, 4 Texas Court Reporter, 341.

WILLIAMS, ASSOCIATE JUSTICE.—Certificate of dissent from the Court of Civil Appeals for the Second District.

A majority of the Court of Civil Appeals agreed in affirming the judgment of the district court in an opinion prepared by Mr. Justice Speer, Mr. Chief Justice Conner dissenting. The two opinions will be reported along with this.

In the certificate the question stated for determination by this court is: "Did the trial court err, under his findings of fact and the undisputed evidence, in holding that Bessie Andrus had failed to reside on the land in controversy as required by law?"

We answer that we agree with the majority of the Court of Civil Appeals in the opinion that the facts found by the trial court, in connection with the undisputed evidence, warranted the conclusion stated, that appellant did not *reside* upon the land within the meaning of the Act of 1901 regulating sales of school lands; and this answers the question of law presented by the certificate.