STATE v. DAVIDSON.†

(Court of Civil Appeals of Texas.    Nov. 9,
1910.    On Motion for Rehearing,
Dec. 14, 1910.)

1. PUBLIC LANDS (§ 173*)—SALES—STATUTES
—CONSTRUCTION.

The act of 1907 requiring purchasers of
school land to reside in person continuously on
the land added nothing to the former statute
requiring purchasers to reside on the land as
a home for three consecutive years after their
purchase, except that it repealed the permit to
reside elsewhere six months in each year for
the purposes specified.

[Ed. Note.—For other cases, see Public Lands,
Dec. Dig. § 173.*]

2. PUBLIC LANDS (§ 173*)—SALES—COMPLI-
ANCE BY PURCHASER WITH LAW—SUFFICIEN-
CY OF EVIDENCE.

Evidence *held* to support a finding that a
purchaser of school lands substantially com-
plied with the law as to residence on the lands.

[Ed. Note.—For other cases, see Public Lands,
Dec. Dig. § 173.*]

Appeal from District Court, Travis County;
Chas. A. Wilcox, Judge.

Trespass to try title by the State of Texas
against Ira B. Davidson.    Judgment for de-
fendant, and plaintiff appeals.    Affirmed.

The nature and result of this suit are stat-
ed as follows in appellant's brief: "This is
an action in trespass to try title, brought by
the state of Texas, as plaintiff, against Ira B.
Davidson, as defendant, involving eight sec-
tions of land of 640 acres each, situated in
El Paso county, and fully described in plain-
tiff's petition.    The petition charged that the
defendant never settled in good faith upon
either of said tracts of land, with the intent
and purpose of making his home thereon,
and never, in good faith, actually resided
upon or occupied said sections of land or
either of them, as by law required of pur-
chasers of public free school land; that on
April 10, 1909, the Commissioner of the Gen-
eral Land Office, being sufficiently informed
of the failure of the defendant to comply
with the law as to settlement, residence, and
occupancy, as alleged in said petition, enter-
ed an endorsement of forfeiture across the
face of the obligations for the unpaid pur-
chase money, and on and across the respec-
tive file wrappers, containing defendant's ap-
plications and obligations.    Said petition
closed with a prayer for a judgment against
the defendant for recovery of title to and pos-
session of each and all said tracts of land,
and for a decree of court canceling, annul-
ling, and holding void and of no force or ef-
fect, the purchases by defendant and finding
and declaring forfeiture of the awards and
sales to him and for writ of possession, etc.
The defendant answered by general demur-
rer, general denial, and plea of not guilty.
The cause was tried before the court without
the intervention of a jury, and the court
rendered judgment for the defendant Ira B.
Davidson, and decreed that the state of Tex-
as take nothing by this suit, to which judg-
ment and ruling of the court the plaintiff,
state of Texas, in open court duly excepted.
and gave notice of appeal to this court and
assigned errors, and this cause is now regu-
larly before this court on appeal."

The trial court filed the following findings
of fact and conclusions of law:

"Findings of Fact.

"(1) Defendant filed applications to pur-
chase eight sections of land described in the
plaintiff's petition, except section 34, on Sep-
tember 23, 1907; his application to purchase
section 34 was filed on the 29th day of Octo-
ber, 1907.    The first seven sections applied
for were awarded to the defendant on Sep-
tember 28, 1907, and section 34 was awarded
to him on October 29, 1907.    Section No. 28
was designated as his home section.    Defend-
ant made his first payment on said land, and
filed his obligations for the balance of the
purchase money and interest; and he has
paid to the state all payments due upon said
land up to this time.    Defendant's applica-
tions to purchase and his obligations for the
deferred payments, were in regular and legal
form.    As there is no controversy as to these
matters, reference is made to the statement
of facts for a more extended statement.    The
only controverted issue in the case is as to
the sufficiency of defendant's settlement, oc-
cupancy, and residence upon said lands.

"(2) I find that on December 25, 1907, the
defendant settled upon section No. 26.    That
said settlement was made by him in good
faith as his home, and that he remained upon
said land the remaining days of 1907 and up
to April 20, 1908, after which he spent a por-
tion of his time upon said land, and a portion
off of it.

"I find that defendant is a young unmar-
ried man; that he was unable to use the land
purchased by him for such purposes as
would enable him to make a living off of it;
and that it was necessary in order to support
himself and in order to earn money with
which to pay the annual payments on his
land, that he work at some character of man-
ual labor.

"I find that at various times during the
years 1908 and 1909 defendant worked for
ranchmen and others in the neighborhood of
his land, and that during such times he usu-
ally slept and ate where he was employed,
but would usually return to his home place
on Saturday and spend Sunday at home.
That while so employed he would sometimes
return to his home place oftener than once
a week, and sometimes he would be absent
from home as long as two weeks at a time.
When not employed he would spend his time
at home, on the land in controversy; and he
so remained at home on various occasions

from a few days to one and two months at a time. From November 27, 1908, until January 25, 1909, defendant was absent from his land on a visit to his parents in Oklahoma. During the year 1910, up to the date of the trial he lived continuously upon his land. I find that during the period covered by the above findings the defendant has had a house and furnishings upon the land sufficient for his needs, and that he cooked, ate and slept there when at home, and that he kept his clothing there. That the days he was at his home, and was actually upon his land, would aggregate, during the year 1908, over six months. In 1909, the days spent upon his land would aggregate probably about four months, certainly less than six months.

"I find that his absences from the land were necessary as above stated, and that during all of this time the defendant, in good faith, considered the house upon the land in controversy at his home."

#### "Conclusions of Law.

"I conclude that defendant's residence upon the land in question has been in contemplation of law a continuous residence and occupancy; that his temporary, though frequent, absences from his home, under the circumstances, constitute no legal break or interruption of his residence upon and occupancy of the land. I conclude that defendant has complied with the spirit of the law, and that the state is not entitled to recover the land."

Jewel P Lightfoot, Atty. Gen., and L. A. Dale, Asst. Atty. Gen., for the State. E. Cartledge, McGown & Price, and Charles Rogan, for appellee.

KEY, C. J. (after stating the facts as above). Testimony was submitted which sustains the findings of fact, and the case must be disposed of in this court upon the facts as found by the trial court. On behalf of the state it is earnestly insisted that the testimony shows that appellee had abandoned his residence upon the land, which abandonment worked a forfeiture, and entitled the state to a judgment for the recovery of the land. On the other hand, and with equal earnestness, counsel for appellee contend that such abandonment of residence was not shown, and that the trial court rendered the proper judgment. The case is not free from difficulty. The testimony brings it within that class where fair-minded persons might reach different conclusions. Counsel for appellant contend, and perhaps correctly, that so much of the former statute as authorized purchasers of school land to reside elsewhere as much as six months in each year for the purpose of educating their children or making money to pay for the land, was repealed by the act of 1907, which prescribes that such purchasers "shall in person reside con-

tinuously" on the land. However, and notwithstanding the repeal of the former statute, we are satisfied that it was not the intention of the Legislature to require purchasers of school land to remain in person upon the land each and every day for three consecutive years, and to prescribe a forfeiture if a purchaser was absent from his land for as much as one day. Before the passage of the act of 1907, the statute prescribed that "all purchasers shall be required to reside upon as a home the land purchased by them for three consecutive years next succeeding the date of their purchase"; and it is not believed that the phraseology of the act of 1907, declaring that such purchasers shall "in person reside continuously" on the land added anything to what was formerly required, except that it repealed the legislative permit to reside elsewhere six months in each year for the two purposes specified in the former law. Under the former law, as construed by the courts, apart from the exception referred to, purchasers of school land were required, in person, to continuously reside upon the land for three consecutive years; and therefore it is not perceived that the use of the words "in person" and "continuously" added anything to the former law, otherwise than to repeal the legislative permit already referred to.

In Bustin v. Robison, 102 Tex. 526, 119 S. W. 1140, our Supreme Court held that a purchaser of school land who, after settling thereon, went to California to visit her parents, was detained by sickness and remained away from the land about three months, had not abandoned her residence on the land, nor forfeited her rights as a purchaser. That case is not entirely anologous, there being but one absence, which was for the purpose of visiting relatives and on account of an unavoidable sickness; while in this case there were many absences, the most of which were for business reasons. However, in this case the longest absence was for the purpose of visiting relatives, and that was not as long as the absence in the case cited. It may be conceded that appellee's other absences from the land were so frequent and of such a nature as to justify doubts as to whether his purchase and original occupancy of the land were in good faith, for the purpose of making it a home. Nevertheless, the proof submitted by the state, and not controverted, was to the effect that after the land was awarded to appellee in the manner prescribed by law, he settled upon it and continuously occupied it as his home for three or four months; and we cannot say that the trial court erred in holding that he purchased and settled on the land in good faith. The main contention on behalf of appellant is that, after complying with the law up to that time, he then abandoned his residence upon the land, and thereby forfeited his rights as a purchaser.

It is a well-settled rule that the law does not favor forfeitures, and requires strict proof of all the facts necessary to create a forfeiture. Furthermore, the learned trial judge had the witnesses before him, one of whom was the appellee himself, and whose testimony on the witness stand was somewhat different from that given in his ex parte deposition and relied on by appellant. That judge was in a better position than we are to determine the credibility of witnesses, and his remoteness from the section of the state in which the land in controversy is situated, as well as his standing as a judge, preclude any suspicion that he was influenced by any other motive than a desire to administer the law fairly and justly. As said by Mr. Justice Williams in Bustin v. Robison, above cited, it would not be wise to undertake to lay down a general rule for this class of cases, the proper course being to dispose of each case according to its peculiar facts.

We do not regard the case of Andrus v. Davis, 99 Tex. 303, 89 S. W. 772, relied upon by counsel for appellant, as entirely analogous. In that case a woman who had purchased and settled upon school land left it and went off to school, where she remained about four months, then returned during the Christmas holidays and spent one or two days on the land, after which she returned to school and remained away from the land for about four months longer. In that case, it seems that the trial court held that the purchaser had forfeited her rights as such, because she had acquired another residence at Denton, where she was attending school; and therefore and necessarily abandoned her residence upon the land there in litigation, and the appellate courts affirmed that holding. In the case at bar it was not shown that appellee had acquired another residence; and, while that circumstance may not be of controlling effect, it is entitled to consideration in determining whether or not he had abandoned his residence on the land in question.

In conclusion it is deemed proper to say that this court has no desire to encourage fraud in any class of cases, and no disposition to discourage the efforts of the Commissioner of the Land Office and the Attorney General to prevent fraud in the acquisition of school lands. No doubt, those officers have acted in good faith in the case at bar; and the most that we can say is that while it is a close case on the evidence, we are not prepared to hold that the trial court erred in finding the facts, nor in holding that appellee had substantially complied with the law under which he purchased the land.

Judgment affirmed.

## On Motion for Rehearing.

This motion has received careful consideration, and we find no reason for changing the conclusion reached in our former opinion. As the motion lays stress upon the fact that the trial judge found as a fact that appellee was absent from his land more than six months during the year 1909, we deem it proper to explain that the testimony shows that nearly a month of that time was embraced in his visit to his parents; about 10 days of it was consumed in assisting in driving a herd of cattle to Midland for shipment, and in visiting some friends at Pecos on the return trip. During the balance of that year appellee worked with livestock on a nearby ranch or did farm work in the valley near Clint, or remained at home upon his land. He left all of his household furniture and clothing in his house; and, during the time that he was doing ranch and farm work, he returned to his home from one to three times each week, with the exception of a few times when the ranch work carried him 12 or 15 miles away. He testified that he returned home on the occasions referred to to see about his things, and that he generally stayed one night and sometimes longer, and cooked and slept in his house on his land. In fact it is quite clear that he never acquired any other residence.

Counsel for appellant have laid stress upon the fact that the proof shows that his cook stove was placed flat on a dry goods box, with no legs in the stove, until after the state's agent Guyer visited the place and interviewed appellee. It is urged that if a stove thus situated could be used for cooking and warming purposes without setting the box on fire, nevertheless its use in that manner tends to show that appellee's improvements were only temporary, and not intended as a permanent home, as he testified they were intended. It may be conceded that the circumstance referred to tends to support the conclusion urged, but, in the absence of proof that the use of the stove in that manner would have set the box on fire, that circumstance is not conclusive. The stove may have been constructed in such manner, or the box may have been made of such heat-resisting material as that appellee could have used the stove as he testified he did for the purpose of warming the house and cooking his meals.

The proof shows that appellee resided over 200 miles from the land at the time he contracted to purchase it from the state; and while it is located within two pastures, there is nothing to indicate any collusion between appellee and any other person, by which appellee was to obtain the land from the state for the use and benefit of such other person. And although, as said in our former opinion, the testimony bearing upon the question of settlement in good faith and continuous occupancy is very close, we do not feel justified in setting aside the judgment rendered by the trial court. However, the disposition that we make of this case ought not to be construed as offering encouragement to pretended settlers upon state school land, nor as discouraging the efforts of the Land Com-

missioner and the Attorney General to enforce the school land laws.

Motion overruled.