## ERICKSEN v. McWHORTER.

(Court of Civil Appeals of Texas. Ft. Worth. Dec. 16, 1911. Rehearing Denied Jan. 20, 1912.)

1. PUBLIC LANDS (§ 173*)—SCHOOL LANDS—PURCHASE—SETTLEMENT—EVIDENCE.

Plaintiff in an action involving conflicting claims to public school lands, of which he became substitute purchaser, and which were thereafter forfeited by the land commissioner, on the ground of plaintiff's failure to reside thereon, and then sold to defendant, may prove that, before his purchase, he and his wife had a home of considerable value in the state, which constituted part of the consideration given by them for the lands involved, and that they thereafter acquired no other property for a home till the purchase in question; plaintiff in becoming a substitute purchaser being required by Rev. St. 1895, art. 4218k, to make affidavit that he desired to purchase the land for a home, and that he had in good faith settled thereon without acting in collusion with others; his purpose and good faith being therefore in issue, and the fact of his old home having been surrendered and having been of considerable value being circumstances relevant and material on the issue of his good faith and illustrative of the purpose and acts on which he relied as constituting settlement, there being evidence that at and before his purchase his wife in person went on the land for the purpose of making a home thereon, and that he, with the same purpose, was thereafter there a number of times and assisted in making improvements.

[Ed. Note.—For other cases, see Public Lands, Dec. Dig. § 173.*]

2. EVIDENCE (§ 317*)—HEARSAY.

All that defendant knew of the matter being what R. told him, when plaintiff and his wife were not present, his testimony that R. claimed part of a fence is inadmissible, over the objection of hearsay, to contradict the testimony of plaintiff and his wife that they owned the fence.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1174–1192; Dec. Dig. § 317.*]

3. PUBLIC LANDS (§ 173*)—SCHOOL LANDS—SALES — SUBSTITUTE PURCHASER — SETTLEMENT.

On the issue of whether there was a sufficient settlement by one who becomes a substitute purchaser of public school lands, emphasis should not be given by instructions to the fact that the settlement and occupancy must be "in person," thus tending to exclude from the jury's consideration the acts of his wife in aid of his settlement and occupancy, to which, as well as all other circumstances, the jury may look; Acts 29th Leg. c. 103, even if adding anything, by the use of the words "in person," to the prior requirements as to settlement, being directed in terms only to an original purchaser of school lands, and not repealing Rev. St. 1895, art. 4218k, as to the affidavit a substitute purchaser thereof shall make as to settlement.

[Ed. Note.—For other cases, see Public Lands, Dec. Dig. § 173.*]

Appeal from District Court, Midland County; S. J. Isaacks, Judge.

Action by Ed Ericksen against S. D. McWhorter. Judgment for defendant. Plaintiff appeals. Reversed and remanded for new trial.

A. S. Hawkins, for appellant. Jno. B. Howard, for appellee.

CONNER, C. J. For the second time, on appeal duly prosecuted, appellant has cause to complain of a judgment against him for four sections of public school land in Andrews county, Tex. The former judgment was reversed for errors in the court's charge. See 132 S. W. 847. The evidence is substantially as before. It is undisputed that the four sections of school land in controversy were duly appraised and awarded by the Commissioner of the General Land Office to one B. S. Cox on March 17, 1906, and it is agreed that by mesne conveyances from Cox appellant "on or about the 3d day of March, 1908, became the owner of the land in controversy in this suit as substitute purchaser from the state of Texas." The Commissioner of the General Land Office certifies that appellant's deed with his applications and substitute obligations for each of the sections of land in controversy were filed in the General Land Office on October 5, 1908, "whereby the said Ed Ericksen became the substitute purchaser of said lands." He further certifies "that said four above-described sections of land were forfeited for failure to reside on the land as required by law October 28th, 1908." After the forfeiture thus stated, the lands were again put upon the market, and appellee became the purchaser. It further appears, as stated in the report of the former appeal, that appellant was a married man, and the head of a family, consisting of himself, wife, and several children, and he and his wife both testified to the effect that at and before his purchase the wife in person went upon the land for the purpose of making a home thereon, and that appellant with the same purpose was thereafter there a number of times and assisted in making certain improvements; that the wife's settlement and occupancy was sufficient seems hardly to be controverted, and the vital issue in the case, as is agreed, is whether appellant's occupancy of the lands in question was such as required by law.

[1] Appellant both by himself and wife offered to prove that before their purchase they had a home in Hillsboro, Tex., valued at $3,000, which constituted part of the consideration given by them for the land involved in the suit, and that they thereafter acquired no other property for a home until the purchase in question was made. This evidence was excluded upon appellee's objection that the same was immaterial and irrelevant, and error has been duly assigned to the ruling. We sustain the assignments presenting this question. In becoming a substitute purchaser appellant, among other things, was required to make affidavit that

he desired to purchase the land for a home, and that he had in good faith settled thereon without acting in collusion with others for the purpose of buying for any other person of corporation, etc. See Rev. St. art. 4218k. Appellant's purpose and good faith, therefore, were in issue, as indeed was directly submitted to the jury in the court's charge, and we think the fact that appellant's old home had been surrendered for the new, and that it had considerable value, were circumstances both relevant and material on the issue of appellant's good faith, and illustrative of the purpose and acts upon which he relies as constituting settlement.

[2] As complained of in appellant's thirteenth assignment of error, it appears that after both appellant and his wife had testified "that they owned the fence on the west side of the four sections in controversy, the first mile on the north side and the next mile down to the northeast corner of said land," appellee, McWhorter, was permitted to testify over appellant's objection that one Ratliff claimed "the first mile of the fence on the north side of the land in controversy in this suit." The bill of exception shows that all appellee knew of the matter was what Ratliff told him, and that neither appellant nor his wife were present at the time of Ratliff's statement. The testimony is clearly hearsay, and, as against the objection that it was such, it was erroneous to permit a contradiction of the testimony of appellant and his wife on the subject by a mere statement of Ratliff.

[3] For the errors pointed out, we think the judgment must be reversed and the cause remanded, but, in view of another trial, we think it also proper to say with reference to the court's charge, also vigorously assailed, that, if not technically erroneous in the definition therein given of an actual settler, we incline to the opinion that the charge was misleading and prejudicial in reiterating the necessity of a settlement "in person." The tendency of the reiteration was to exclude from the consideration of the jury the acts of the wife in aid of appellant's settlement and occupancy, and to those, as well as to all other circumstances, the jury would have the right to look.

In this connection it will, in the opinion of the writer, not be amiss perhaps to call attention to the fact that the act of 1905 (see General Laws 1905, p. 159), which affords the basis of appellee's insistence that the court correctly defined the terms "actual settler" as one "who actually in person and in good faith settled upon and lived upon the land for the purpose of making the same his home," does not undertake to provide the terms upon which the vendee of an original purchaser may become a substitute purchaser in the land office. It prescribes the conditions upon which a person may become an original purchaser of school lands, and, among other things, provides that such intending purchaser shall make affidavit "that he is or will, as the case may be, in good faith become in person an actual bona fide settler upon some portion of the land he purchases," etc. It has been held in a recent case to be doubtful whether the term "in person," for the first time required in the affidavit of a purchaser by the act of 1905, added anything to the requirements under previous laws. See State v. Davidson, 132 S. W. 520. But, at all events, as stated, the law of 1905 has particular reference to regulations pertaining to original, and not substitute, purchasers. For regulations and requirements relating to the latter class the law is apparently left as it aforetime was. In the act approved April 1, 1887 (see Gen. Laws 1887, p. 86), which was an act providing for the sale and lease of school and other public lands, it is provided in section 10 that original purchasers under that act might at any time after their purchase sell their lands, and that in such cases "the vendee, or any subsequent vendee, may file his own obligation with the Commissioner of the General Land Office, together with the duly authenticated conveyance, or transfer, from the original purchaser, and the intermediate vendee's conveyances or transfer, if there be any, duly recorded in the county where the land lies, or to which it may be attached for judicial purposes, together with his affidavit stating that he desires to purchase the land for a home and that he has in good faith settled thereon, and that he is not acting in collusion with others for the purpose of buying the land for any other person or corporation, and that no other person or corporation is interested in the purchase save himself; and thereupon the original obligation may be surrendered or canceled and the vendee shall become the purchaser direct from the state and be subject to all the obligations and penalties prescribed by this act, and the original purchaser shall be absolved from further liability thereon." Another general act on the same subject was passed in 1895 (see General Laws 1895, p. 63), which again, in section 10, prescribed the conditions upon which a vendee of an original purchaser of school lands might become a substitute purchaser in substantially the same language as we have quoted from the act of 1887, and these provisions were carried forward and included in the Revised Statutes, art. 4218k, which certainly in direct terms was not repealed by the law of 1905. Suppose a vendee of an original purchaser under the act of 1905 presents to the Commissioner of the General Land Office his affidavit stating "that he desires to purchase the land for a home and that he has in good faith settled thereon," and otherwise complies with the requisites of article 4218k, can the commissioner lawfully refuse to accept such vendee as a substitute purchaser on the ground merely that the affidavit fails to state that the settlement is "in person"? Under the laws of 1887 and

1895, our courts of last resort had frequent occasion to define the term "actual settler," one of which definitions may be found in the case of May v. Hollingsworth, 35 Tex. Civ. App. 665, 80 S. W. 841. As there approved an actual settler "is one who actually occupies and settles upon the land intending to make it his home." In Busk v. Lowrie, 86 Tex. 132, 23 S. W. 984, our Supreme Court, in speaking of the actual settlement required under the school land law there under consideration, says: "The language of the statute was used by the Legislature for a definite purpose, which was to secure real bona fide settlers upon the land. The word 'actually' is used in the sense of being a real, and not a constructive or virtual, settlement. The courts of this state have so construed the same language used in pre-emption laws." This language is cited with approval in the later case of Hardman v. Crawford, 95 Tex. 193, 66 S. W. 206, and in that connection it is further said: "Article 4218k requires actual settlement of the vendee of an actual settler." In none of the decisions referred to have the courts undertaken to add to the language on the subject found in the statutes. And under these statutes it has never been held that, in order to comply with the terms of the statute relating to actual settlement and continued occupancy, that there should be at all events and without exception continuous, personal, pedal, possession of the land. See Willingham v. Floyd, 32 Tex. Civ. App. 161, 73 S. W. 831; Bustin v. Robison, 102 Tex. 526, 119 S. W. 1140; and the case of State v. Davidson, 132 S. W. 520, hereinbefore cited. Of these the last two cases are particularly instructive inasmuch as they were decided after the law of 1905; one of them (State v. Davidson) having direct relation to a purchase of school lands made in October, 1907.

Repeals by implication are not favored, and laws should be construed so as to avoid a forfeiture if it can be done without doing violence to terms used, hence can it be said with certainty that the Legislature by the act of 1905 intended to add anything to the requirements of the law specifically relating to substitute purchasers, it being a fair presumption that the Legislature intended to leave the law relating to such purchasers subject to the construction theretofore given it. It must certainly be doubtful. However, in making the foregoing observations, the writer does not wish to imply that substantially less in the way of settlement and occupancy is to be required of the substitute purchaser than is required of an original purchaser, for the spirit of the law in order to entitle one to become a substitute purchaser of school lands certainly requires, among other things, that, in cases where the occupancy of the original purchaser has not been completed, he shall become for himself an actual

settler in good faith for the purpose of making the land his home, but the discussion has been offered as showing that, under the peculiar circumstances of this case, emphasis at least is not to be given to the fact that the settlement and occupancy must be "personal."

It is ordered that the judgment be reversed, and the cause remanded for a new trial.