McWHORTER v. ERIKSEN.

(Court of Civil Appeals of Texas. El Paso. Nov. 14, 1912. Rehearing Denied Dec. 11, 1912.)

PUBLIC LANDS (§ 173*)—SETTLEMENT—SUFFICIENCY.

Plaintiff purchased school lands from a purchaser from the state before the expiration of the three years' occupancy by such purchaser. Plaintiff's wife immediately went on the land, made her home thereon, but plaintiff did not personally go thereon for over two months, and was not there continuously after that time. *Held*, that there was not a sufficient settlement on the land by plaintiff under Rev. St. 1895, art. 4218k, requiring substitute purchasers to file the conveyance or transfer, together with an affidavit that he desires to purchase the land for a home, and has in good faith settled thereon.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 544–551; Dec. Dig. § 173.*]

Appeal from District Court, Midland County; S. J. Isaacs, Judge.

Trespass to try title by Ed Eriksen against S. D. McWhorter. Judgment for defendant, and plaintiff appeals. Reversed and rendered.

John B. Howard, of Midland, for appellant. A. S. Hawkins, of Phœnix, Ariz., for appellee.

McKENZIE, J. There have been two former appeals in this cause. See Ericksen v. McWhorter, 132 S. W. 847; same, 143 S. W. 245. This is a suit in the form of trespass to try title brought by appellee as plaintiff against appellant as defendant for the land in controversy. Upon trial it was agreed that on March 3, 1908, appellee, by regular transfer and applications duly filed and accepted in the general land office became the substitute purchaser from the state of the land in controversy, and that thereafter the Land Commissioner canceled appellee's purchase on the ground of failure on his part to occupy and improve the land, as required by law. The Commissioner thereafter awarded the land to appellant. Upon trial, judgment was rendered in favor of appellee, and the appellant appeals the case to this court. In the trial it was admitted as a fact that appellee was never upon the land until two months after the transfer to him by Donelson, his grantor, and abandonment by Donelson of said land. It is undisputed that the affidavit of settlement made by the appellee, which accompanied the transfer and applications as filed in the General Land Office, was of the same date as the said transfer and applications, and was made at the same time and two months prior to appellee's going upon the land. Donelson's abandonment of the land occurred on or about the date of the transfer, and appellee's wife, immediately upon the abandonment of the land by Donelson, went upon and took possession thereof and occupied same until said cancellation. The appellee seeks to excuse his failure to go and make settlement in person upon the land for two months after the transfer and abandonment thereof by Donelson upon the ground that settlement and occupancy of the land was made by his wife; that her settlement and occupancy was a fulfillment of the requirements of the law, and such as to render unnecessary his settlement upon said land.

The question then is, Can the wife, for the husband, make the settlement which is required by the law for substitute purchasers of land originally purchased from the state under the act of 1905? Or, to restate the question, Can Eriksen, as substitute purchaser of Donelson, recover the land in controversy, although he did not go upon the land until two months after Donelson had transferred the land to him and had abandoned it? The land in controversy was purchased from the state under the Act of 1905, c. 103, section 3 of which act provides that: "Each application shall contain the affidavit of the applicant to the effect that he desires to purchase the land for a home, or as additional to the home applied for, or as additional to his own land which has been theretofore purchased from the state, or as additional to his own private land, as the case may be, and that he is or will, as the case may be, in good faith become in person an actual bona fide settler on some portion of the land he purchases, or upon his other land, as the case may be, within ninety days from the date his application is accepted, also that he is not acting in collusion with others for the purpose of buying the land for any other person or corporation, and that no other person or corporation is directly or indirectly interested in the purchase thereof; also every application shall be accompanied by the obligation of the applicant in a sum equal to the amount of the deferred payment offered for the land." And section 4 provides that: "All sales shall date from the day the successful applicant's application was filed in the land office. The applicant shall have ninety days from the date of the acceptance of his application within which to actually settle upon the land so purchased, and he shall within thirty days after the expiration of said ninety days given within

which to make settlement, file in the land office his affidavit that he has in good faith actually in person settled upon the land purchased by him. Should the applicant fail to make and file the affidavit and proof of settlement as herein provided within the time specified, the Commissioner of the. General Land Office shall indorse that fact upon his application, canceling the same, and immediately place the same upon the market by notice to the clerk, fixing a date not less than thirty days thereafter when application may be filed for the purchase thereof, and any sum which may have been paid upon a former application, canceled as aforesaid, shall be forfeited to the fund to which the same belonged."

In order to arrive at the status of the parties, it becomes necessary for us to construe the meaning of the above language as pertaining to settlement. This language, we think, is definite and intelligible. In plain words the statute requires that the original purchaser of land from the state shall make actual settlement in person thereon, and further requires that such original purchaser shall make affidavit to the fact that he has made actual settlement in person upon said land. The very terms of the statute inhibit any other than actual settlement in person by the purchaser; else the purchaser would be incompetent to make the required statutory affidavit of settlement.

Article 4218k of the Revised Statutes of 1895, being in force at the time when Donelson transferred the land to the appellee, and which controls transfers of school land before the three years' residence has been completed, is as follows: "Purchasers may also sell their lands, or a part of the same, in quantities of forty acres or multiples thereof, at any time after the sale is effected under this chapter, and in such cases the vendee, or any subsequent vendee, or his heirs or legatees, shall file his own obligation with the Commissioner of the General Land Office, together with the duly authenticated conveyance or transfer from the original purchaser and the intermediate vendee's conveyance or transfer, if any there be, duly recorded in the county where the land lies or to which said county may be attached for judicial purposes, together with his affidavit, in case three years' residence has not already been had upon said land and proof made of that fact, stating that he desires to purchase the land for a home, and that he has in good faith settled thereon, and that he has not acted in collusion with others for the purpose of buying the land for any other person or corporation, and that no other person or corporation is interested in the purchase, save himself, and thereupon the original obligation shall be surrendered or canceled or properly credited, as the case may be, and the vendee shall become the purchaser direct from the state, and be subject to all the obligations and penalties prescribed by this

151 S.W.—40

chapter, and the original purchaser shall be absolved in whole or in part, as the case may be, from further liability thereon."

Our Supreme Court, in construing this statute in the case of Hardman v. Crawford, 95 Tex. 193, 66 S. W. 206, says: "The statute authorizes the actual settler to convey to another, but requires of the vendee to make the same character of settlement upon the land as was required of the original purchaser. In other words, the state allows an actual settler to be substituted by another with the same qualifications, and performing the same duties, but there is no provision by which land once sold to and occupied by an actual settler can be transferred, before the expiration of three years' occupancy, to another person, unless the state at the same time acquires another actual settler in place of the one that is released. This is a matter of statutory provision, and so plainly expressed as to leave no room for construction."

Following our Supreme Court's construction of article 4218k, supra, Eriksen, as substitute purchaser, was required to make the same character of settlement upon the land as was required of the original purchaser. Eriksen's settlement, then, was required to have been made at the same time that Donelson transferred the land and made abandonment of his settlement so that the continuity of settlement of both Donelson and Eriksen be maintained. It is evident, too, that it was never intended by the Legislature that the substitute purchaser should be relieved in any manner of performing the obligations which were required of the original purchaser. As said in Busk v. Lowrie, 86 Tex. 132, 23 S. W. 984: "The language stated was used by the Legislature for a definite purpose, which was to secure real bona fide settlers upon the land. The word 'actual' is used in the sense of being a real, and not a constructive or virtual, settlement." Accordingly it is our opinion that Eriksen's settlement was not such settlement as was required. The settlement as required of Eriksen is not such as can be made for him by his wife, his agent, or his proxy; it must be actual and in person. To hold otherwise would permit the wife, for the husband, to make the settlement and to occupy the land without any necessity of the husband's actual presence thereon at any time. If we should construe the statute as permitting the wife to make the settlement for the husband, should we not construe it as also permitting the wife to make the required affidavit of settlement for the husband? Then would it not follow with truth and reason that the wife, for the husband, may acquire the lands of the state, though applied for by the husband, without the necessity of the husband ever going upon said land? Because of his admission that he did not go upon the land for a period of two months after Donelson had made the transfer of the land to him, and after the land had been abandoned by Donel-

son, we are required to hold that Eriksen failed to make the settlement as required by law.

We have examined with much care the opinion rendered in this case on a former appeal. 143 S. W. 245, supra. It is our opinion that the personal views of the writer as therein expressed are applicable to the occupancy of land by an actual settler only after settlement has been made. The question in the instant case is one of settlement and not of occupancy. The cases cited by the writer of that opinion (143 S. W. 245, supra) dealt with the question of occupancy only, unless it be the case of Willingham v. Floyd, 32 Tex. Civ. App. 161, 73 S. W. 831. In the latter case the land involved was purchased under the law then in force, which required a settlement on the land by the applicant before making application to purchase. Floyd, the appellee, testified as follows: "After I returned from having the land surveyed, I hired a dray wagon, purchased a tent, and sent the wagon, the tent, a lot of provisions, and household furniture to be placed on section 14, at the spot I had selected for my home. I also sent my wife out in a separate conveyance, along with E. W. Lee and his family, who went out the same day to take up some land near by. All these went out on the evening of the 29th of July. I did not go out with my wife to the land, because there was a great demand and rush for this land, and I stayed in town for the purpose of making my applications and getting same filed first; and it was my intention to go out to section 14 as soon as I made my application, and this I did. I sent my wife to this section on said day, because I considered it my home at that time, and thought that my wife should be at her home." This testimony shows that the husband went upon and surveyed the land and located the home site, whereas, in the instant case, the husband, as substitute purchaser, never so much as saw the land for two months after his vendor had made transfer and abandonment.

Upon the trial, in due time appellant requested the court to peremptorily instruct the jury to return a verdict for him, which the court refused. This ruling is assigned as error, and we are of opinion it should be sustained. It becomes our duty, therefore, to reverse the judgment of the trial court, and to now render judgment for the appellant.

Reversed and rendered.

HARPER, C. J., did not sit in this cause.

HIGGINS, J. I concur with justice McKENZIE in the view that this cause should be reversed and here rendered for appellant, but I do not fully concur in all of the reasoning of his opinion. I think the facts clearly disclose that Eriksen made a settlement upon the land, but that this settlement was constructive rather than actual, and that the law requires a settlement of the latter character. It was undisputed that Eriksen himself was never upon the land until two or three months after the same was transferred to him by Donelson; but it is contended that settlement was made by him within the meaning of the law by the fact that his wife at once entered into possession thereof and established their home thereon, and that this was sufficient. The material facts were undisputed upon this issue, and are as follows: Mrs. Eriksen testified: "My husband and I acquired this land from Donelson that we might have a home. My husband and I had not taken up any land from the state at that time. * * * I went out there to examine the land for Mr. Eriksen and myself. Mr. Eriksen was engaged in blacksmithing at the time the trade for the land was finally made. After the trade was made, I went out there and made settlement on the land and moved on it as soon as I could get there. At that time old Father Donelson, his daughter-in-law, Mrs. Donelson, and my little nephew went with me. Old Father Donelson was the man we got the land from. This was immediately after the deal for the land was closed. I moved on the land and built a house. When I went out there the first time, I took horse feed and something to eat and some posts and wire and some lumber. I took some bedding and household effects. I took bedding and clothes for myself and the little boy until I returned. I put the stuff on the land that I carried out there. I sent back for other material and put up a house as quick as I could get it up. It took, of course, a few days. I put up a 10 by 14 boxed house. I put fencing there. We put something over two miles of fencing as quick as we could get it up. I do not remember the exact time it took to put it there. We did not make very much clearing there. We dug out a tank there. There had been some work, and we put in a couple of days with a team and scraper cleaning it out—Son and myself. We did not put in any crop the first year. We did afterwards. Mr. Eriksen furnished the money to buy the improvements. We wanted the improvements to establish our claim to the land and make the title good. We thought the law wanted us to put the improvements there and of course make a home. * * * I think I know why Mr. Eriksen did not go with me when I first went out on the land. It was because his business required his attention—blacksmithing. He stayed in town to provide means to sustain life and improve the home and pay the debts that was on it, etc. He had no other means to pay these notes against the land but his labor and his income from the shop. * * * My husband and I did not have any other home anywhere from the time we made this trade with Donelson up to the time that the land was canceled and until the three years' occupancy was completed."

Eriksen himself testified as follows: "I made a trade with Donelson for this land. I bought the land and paid him a bonus. He partly lived it out, and I bought the four sections and the claim for a certain amount, paid part down, and paid part in small notes along in one, two, and three years, somewhere along there. I got a deed to the land from Donelson. It shows the consideration correctly. * * * I bought this land to have a home. I thought it was good time to begin a start to get a little home of my own. When we talked about making the trade, we agreed for her to go and look at the land as I was busy in the shop, to see whether it was what we wanted or not, and, if it was, we would buy it, and when they came back they agreed the land was all right and bought the land for a certain consideration. We put in a home we had in Hillsboro, our homestead, and some little money and the balance in notes—about $3,000 or $3,500—something about like that in notes. * * * I do not remember how soon after the deal was closed it was until I went out on the land. It was not long until I went out there and spent a while. I can't get it down. I have been trying to think it up, but I cannot remember. It was not long because I was anxious to see it. When I went out the first time, I stayed somewhere about a couple of weeks. I did not go on the land sooner because I did not feel like I could leave my business and do ourselves justice. It was very busy times, and I tried to pick slack times to go out there whenever I could. I made other trips out there. I cannot remember the time. I was out there three or four times—two or three trips—before the land was canceled. * * * When I was out there I worked, helped build fences, and done some little plowing and whatever I could do. I considered that my home, during the meantime, was in Andrews county on the four sections. I had no means of livelihood but my trade. I never learned any other business."

The cases of Andrus v. Davis, 99 Tex. 303, 89 S. W. 773, and Bustin v. Robison, 102 Tex. 526, 119 S. W. 1140, to my mind clearly held that the occupancy required must be actual rather than constructive, and it is difficult to read the Acts of 1905 relating to the sale of free school land without reaching the conclusion that the Legislature clearly and definitely intended that actual settlement and occupancy is required rather than constructive. In Bustin v. Robison, supra, the court held that a temporary absence from the land did not operate as a break in the actual occupancy required by the law, but there is nothing in that opinion, as I construe it, which militates against the view clearly held in the Andrus Case that actual occupancy is required. Personally I regard this provision of the statute requiring a continuous personal occupancy as most unfortu-

nate, and one which has materially retarded and delayed the development of this portion of our state, but I think the legislative intent clear, and the courts must observe it.

In the case at bar, I think it clearly appears, as a matter of law, that Eriksen's settlement upon the land was constructive rather than actual, and as such was insufficient.