### W. G. Busk v. W. R. Lowrie et al.

### No. 60.

### Homestead Donation—Actual Settler.

On October 28, 1889, L. and C. went upon a strip of vacant land, and each worked upon the land selected by him for half a day. Next day each made affidavit of claim as actual settler, and application for survey. Each was head of a family. One returned in January and the other in February, 1890, with his family, built residence, enclosed and cultivated part of the land. March 10, 1890, B. applied to buy the land, including the claims of both. March 20, 1890, the land was surveyed under all the claimants. The Commissioner of the Land Office issued patent to B. He sued L. and C............................... 130

*Held:* 1. The applications, October 29, gave no right, as neither was an actual settler. ........................................... 131

2. The survey, March 10, 1890, without an application that can be considered for any purpose, gave no validity to the claims for homestead donations...................................................... 132

3. If L. and C., at the time they had become actual settlers, had made affidavit of such facts. and applied for survey, their claim would have been valid against B., a purchaser under what is known as the Scrap Act.  Laws Twenty-first Legislature, ch. 54, p. 48............. 132

Error to Court of Civil Appeals for Third District, in an appeal from Coleman County.

*Ledbetter & Randolph*, for plaintiff in error. — To entitle a party to acquire any legal or equitable rights to public land under the homestead donation laws of this State, such party must be an actual bona fide settler and resident on said land before and at the time of making his application, affidavit, and file to acquire same as such homestead; and if he seeks to acquire same as a homestead for a family, as a head of a family, he must reside on the land with his wife or family before and at the time of his application, affidavit, and file.  The legal interpretation of the phrase " actual settler," as defined by our courts, is one who has his home and actually resides on the land soug t to be acquired as a homestead.  Rev. Stats., arts. 3937–3942; Mills v. Brown 69 Texas, 244; Burleson v. Durham, 46 Texas, 153; Perkins v. Miller, 60 Texas, 61; Turner v. Ferguson, 58 Texas, 10.

*Sims & Snodgrass*, for defendants in error.

BROWN, Associate Justice. — Starkweather had a body of land enclosed in Coleman County as a pasture, which embraced the lands in controversy, with a fence running east and west so as to divide it into two pastures.  He sold to appellant that portion of the land lying north of the fence in 1886.  Starkweather did not know that the land in controversy was vacant when he enclosed it; neither did Busk know that fact when he purchased it.  There was, however, a vacancy of 234 acres between two surveys inside the enclosure.  Busk discovered, in 1886, that the land was vacant, and located a certificate upon it, but the Commissioner of the General Land Office held the location void, as it did not embrace more than 640 acres, and was within an organized county.

In 1889 the surveyor of Coleman County wrote to the General Land Office, inquiring if the land was vacant.  On the 17th day of August of that year the chief clerk of the General Land Office replied to the surveyor, informing him that the land was vacant.

On the 28th day of October, 1889, Lowrie and Cornelius were each the head of a family, and neither had a homestead, and on that day Cornelius took his wife with him, and Lowrie without any member of his family, went upon the land in controversy, and each of them performed the following acts respectively:

Lowrie smoothed off the ground and made rock pillars for a house in which he intended to live, cleared some brush off about an acre of land, and trimmed up some shade trees. He intended to move his family upon the land as soon as he gathered his crop. He accomplished all that he did on the land by the hour of noon that day, and left. The next day he made the affidavit required by law, and made application to the surveyor to survey the land for him under the homestead donation law. He did not return to the land until the 20th day of January, 1890, when, with his family, he returned. and brought with him some lumber, beginning the construction of his house. He built the house, fenced about 50 acres with a barbed wire fence, and put about 16 acres in cultivation, and has continued to live on the land since that time. His oath and application were filed in the General Land Office in November, 1889.

Cornelius, at the time he and Lowrie first went on the land, built of surface rock a wall about three feet high and fifteen feet long, as a protection for his stock, and finished his work by the middle of the day. On the next day, the 29th day of October, 1889, he made oath as required by law, and filed it with his application to the surveyor to survey the land under the homestead donation law. His application was not sent to the General Land Office until March 30, 1890. He did not return to the land again until sometime in February, 1890, when he got out some stone pillars, and about the last of February or the first of March he hauled some lumber on the ground and built a house and completed it, and moved his family into it during the month of March. His wife had been sick, which prevented him from moving for sometime prior thereto.

On the 10th day of March, 1890, Busk applied for the purchase of the land under the Act of 1889 and 1887 known as the "scrap law," and on the 20th day of that month the surveyor of Coleman County surveyed the land for all the parties, first surveying it into two tracts, one of 160 acres for Lowrie, and one of 74 acres for Cornelius; and then he surveyed the whole for Busk. All of the field notes were returned to the General Land Office in due time, and in the following June the Commissioner of the General Land Office issued patent to Busk for the land, he having paid for it and all fees. Lowrie and Cornelius paid all fees charged against them, or arranged with the surveyor to his satisfaction.

Appellant sued the appellees in the District Court of Coleman County for the land, and upon a trial judgment was rendered for the appellees, Lowrie and Cornelieus, from which Busk appealed. The Court of Civil Appeals affirmed the judgment of the District Court, and the case is before this court on writ of error.

We do not regard it as material to determine whether Busk had a preference right to purchase the land or not. He had a right to purchase

which was equal to the right of appellees to acquire the land as a homestead donation, up to the time that their rights attached under the law.

The patent issued by the State to Busk invested him with the legal title to the land, and he should recover unless the rights of appellees attached before the 10th day of March, 1890, the day on which Busk made his application to purchase the land.

Appellees claim the land under title 79, chapter 9, Revised Statutes, entitled Homestead Donations. Article 3939 requires each person entitled, and who desires to acquire a homestead under the provisions of that chapter, to present to the surveyor of the county his application in writing, containing, among other things, a statement under oath that he has actually settled upon the land which he claims. Article 3940 requires the application to be made at the time of settlement, or within thirty days thereafter. From this it is plain that there must be actual settlement, and that such settlement must precede the application.

The pre-emption laws of this State have always, or at least generally, required actual settlement on the lands sought to be pre-empted, and cases construing those laws are in point as authority in this case.

In Cravens v. Brooke, 17 Texas, 274, the court, in speaking of the settlement required under the pre-emption law, said: "The only condition which the law imposes is that of settlement and improvement on vacant land. The acts of the applicant are alone the subject of inquiry. Was the land vacant, and has it been settled and improved, and not what the settler thought or imagined or supposed about the title, or whether he imagined it vacant or otherwise."

In Burleson v. Durham, 46 Texas, 160, the question was as to whether or not the claimant was an actual settler, and the court said: "But the actual settler intended by the statute must reside on the land, or occupy preparatory to and with the bona fide intention of residing thereon." See also, Turner v. Ferguson, 58 Texas, 10.

In Thomas v. Porter, 57 Texas, 59, the party claiming a homestead was a tenant, as was Lowrie in this case, and with one of his sons went upon the land and *remained* there until he provided a house for his family, when he removed the family to the land. The court, upon the question of occupancy, said: "From the fact that he took possession of the land, removed his family to it a short time afterwards, and remained upon it permanently, the most rational presumption is that he took possession for the purpose of making it his home, and that it became his home from the time that he so took possession."

The making of the application did not give right to the land, nor would the failure to make the application within the time prescribed deprive the actual settler of the right to complete and perfect his claim as against persons who acquired no right in the land before the application was filed. Gammage v. Powell, 61 Texas, 630. The survey of the land, however,

could not be made until the application was filed, and if made without such application would be void.   Miller v. Moss, 65 Texas, 179.

The language of the statute was used by the Legislature for a definite purpose, which was to secure real bona fide settlers upon the land.   The word "*actually*" is used in the sense of being a *real*, and not a *constructive* or *virtual settlement*.   The courts of this State have so construed the same language used in pre-emption laws.   The question is, did the appellees make a real settlement upon the land before they made application for its survey ?   This can not be seriously claimed by any one.   It is evident that the purpose was not to settle upon the land at the time, but to reserve it for future settlement.   The learned judge who delivered the opinion of the Court of Civil Appeals said: "The object and purpose of the law was to secure homes to heads of families who would become actual settlers upon the public domain," etc.   The statute does not so read.   Its purpose was to secure homes to such heads of families as *had become* actual settlers upon the public domain, and required the applicant to swear that he *had actually settled*, and not that he *would settle* upon the land in the future.   This is not a case analogous to the acquisition of a homestead exemption.   The head of the family owning land may designate it as a homestead by such acts as clearly indicate his intention to use it as such; but in this character of case the title is to be acquired under a statutory requirement of *actual settlement*, which is a *condition precedent*.   The difference between the two classes of cases is made more manifest by article 3950, Revised Statutes, which prescribes the cases in which a temporary absence from the land will not forfeit the homestead claim.

Articles 3944 and 3945, Revised Statutes, sustain the construction here given to the law by the requirements that proof must be made that the applicant has resided upon, occupied, and improved the land for three consecutive years from the date of the application, before a patent can issue upon such claim.   The law deals with the acts of the party, and not his intentions without such acts; and in order to acquire the right, the law must be complied with.   If it is harsh, it is nevertheless the law, and courts can not change it.

It is clear that the acts of appellees performed before the filing of the applications did not constitute actual settlement, and gave no right to them.   The only remaining question is, did the acts of settlement done afterwards—that is, in January by Lowrie, and in February or March by Cornelius—confer upon them a superior right to that of Busk ?   We believe that if the appellees had made application for the land after the acts done subsequent to the application, that is, had followed up such acts with an application as required by law, they would have secured their homestead claims.   Especially is this true as to Lowrie.   But surely the acts of settlement could not relate back to the time of filing a false statement, and make good that which was not true when made.   The law says

that the affidavit must be made at the time or after the filing of an application. The court has held that survey without application is void; and as there was no application containing an affidavit of the settlement really made, " the only actual settlement," the surveys made for appellees were void, and conferred no rights upon them.

The judgments of the Court of Civil Appeals and of the District Court are reversed, and this cause remanded to the District Court for further trial.

*Reversed and remanded.*

Delivered November 16, 1893.