## PATRICK v. BARNES.

(Court of Civil Appeals of Texas. Amarillo. Jan. 17, 1914. Rehearing Denied Feb. 7, 1914.)

1. PUBLIC LANDS (§ 173*)—ACTIONS—QUESTIONS FOR JURY.

In trespass to try title to school lands, evidence *held* to make a question for the jury as to whether defendant, at the time of his application to purchase the lands, had settled thereon in good faith, desiring it as a home.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 544–551; Dec. Dig. § 173.*]

2. PUBLIC LANDS (§ 173*)—ACTIONS—EVIDENCE.

In trespass to try title by one holding a certificate of purchase from the Land Office against one in possession, who filed his application to purchase subsequent to that of plaintiff, but before plaintiff filed his proof of occupancy and obtained the certificate of purchase, while proof of plaintiff's application, the award to him, payment of the required amounts, and the certificate of proof of occupancy made a prima facie title, defendant, to defeat a recovery, was only required to show that plaintiff was not an actual settler on the land, and that his proof of occupancy filed subsequent to defendant's application was false and was not required to show an equitable title in himself, and hence need not show that his application was not rejected because the records of the Land Office showed that he had already purchased four sections.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 544–551; Dec. Dig. § 173.*]

3. PUBLIC LANDS (§ 173*)—SCHOOL LANDS—POWERS OF COMMISSIONER OF LAND OFFICE.

Where, before an applicant to purchase school lands filed his proof of occupancy, another application was filed by a person in possession, the Commissioner had no power to adjudicate the rights of the parties, and the certificate of occupancy did not preclude the party in possession from showing in the courts that the earlier applicant was not an actual settler.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 544–551; Dec. Dig. § 173.*]

4. PUBLIC LANDS (§ 173*)—ACTIONS—INSTRUCTIONS.

In trespass to try title by one holding a certificate of purchase from the Land Office against a subsequent applicant, whose application was filed before plaintiff's proof of occupancy, an instruction to find for defendant if, prior to the date of his application in good faith, he actually settled upon the land with a bona fide intention of purchasing it and making his home thereon, and if he was an actual settler in good faith and actually residing upon the land at the time he made his application to purchase, and if plaintiff had not been and was not an actual settler in good faith, was not subject to the criticism that it authorized a recovery by defendant without a finding that he actually settled upon and was in good faith residing on the land as a home at and prior to the date of his application, especially where the court further repeated its charge as to defendant's required settlement and charged that, unless plaintiff was not an actual settler, they must find for him, even though defendant was an actual settler.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 544–551; Dec. Dig. § 173.*]

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

**5. PUBLIC LANDS (§ 173*)—ACTIONS—EVIDENCE.**

In trespass to try title to school lands against one in possession, who also applied to purchase such lands before plaintiff's proof of occupancy was filed in the Land Office, such proof of occupancy was ex parte and not evidence of occupancy by plaintiff, and hence the court properly charged that it was admitted only to show that such proof was made.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 544–551; Dec. Dig. § 173.*]

**6. APPEAL AND ERROR (§ 1050*)—HARMLESS ERROR—ADMISSION OF EVIDENCE.**

In trespass to try title to school lands by the holder of a certificate of purchase from the Land Office against one who filed his application to purchase the same lands before plaintiff's proof of occupancy, where the court required defendant to prove, not only that plaintiff was not an actual settler, but that defendant was such actual settler, the admission of defendant's proof of occupancy and the affidavit of two compurgators, limited to the question of whether such proof was made, did not injure plaintiff, as it tended at least to show that defendant asserted a claim of right and kept it up.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1068, 1069, 4153–4157, 4166; Dec. Dig. § 1050.*]

**7. PUBLIC LANDS (§ 173*)—ACTIONS—INSTRUCTIONS.**

In trespass to try title to school lands by one holding a certificate of purchase from the Land Office against one who filed his application subsequent to that of plaintiff, but before plaintiff's proof of occupancy was filed, the court properly refused to charge on the question of defendant's abandonment of the land, even though the evidence raised that issue, since the only question involved was whether plaintiff was an actual settler.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 544–551; Dec. Dig. § 173.*]

**8. TRIAL (§ 260*)—INSTRUCTIONS—CURE BY OTHER INSTRUCTIONS.**

In trespass to try title to school lands by one holding a certificate of purchase against one who filed his application subsequent to that of plaintiff, but before plaintiff's proof of occupancy was filed in the Land Office, the refusal of an instruction that if plaintiff was an actual settler on the land when he made his application to purchase, and thereafter left and remained away through a well-grounded fear of death or serious bodily harm, his rights would not thereby be prejudiced was not error, assuming that the evidence raised such question, where the court did charge that, if plaintiff actually settled on the land and was in good faith residing thereon at the time he made his application, it did not matter whether he continued to reside thereon or not.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

**9. PUBLIC LANDS (§ 173*)—ACTIONS—EVIDENCE.**

A certificate of purchase of school lands by the Commissioner of the Land Office, if given before an intervening application, is conclusive, but if given after such application is rebuttable, if it has any probative force, and if given after the Commissioner is deprived of power to determine the question of settlement, the question is for the courts.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 544–551; Dec. Dig. § 173.*]

**10. TRESPASS TO TRY TITLE (§ 6*)—EVIDENCE —BURDEN OF PROOF.**

The plaintiff in trespass to try title must recover on his own title and not on his adversary's lack of title.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. §§ 5–9, 15, 16; Dec. Dig. § 6.*]

Appeal from District Court, Donley County; J. N. Browning, Judge.

Action by W. H. Patrick, administrator, and others, against L. C. Barnes. Judgment for defendant, and plaintiff administrator appeals. Affirmed.

See, also, 105 Tex. 146, 146 S. W. 154.

Madden, Trulove & Kimbrough, of Amarillo, and J. H. O'Neall, of Clarendon, for appellant. A. T. Cole and H. B. White, both of Clarendon, and D. W. Odell, of Ft. Worth, for appellee.

HUFF, C. J. This suit was originally brought by J. B. Williams in December, 1904, in the usual form of trespass to try title. He afterwards died, and administration was had on his estate, and appellant, W. H. Patrick, was appointed administrator, and the heirs of J. B. Williams also joined in this suit. The appellant, Patrick, amended his petition, setting up the death of Williams, and continued the suit in the form of trespass to try title. The appellee, L. C. Barnes, answered by plea of not guilty and general denial and by special plea to the effect that the lands in question are public free school lands, and that he, on July 30, 1902, made application to purchase in due form of law, causing his application and tender of purchase money to be transmitted and made in due form and time; that prior thereto he had actually settled and was residing on the land and continued to reside and occupy the land as a home, erected valuable improvements, and in all things complied with the law. He also charges that Williams at the time of his application to purchase the land was not in fact an actual settler thereon and had not continued to reside thereon for three consecutive years.

On the 12th day of January, 1901, J. B. Williams applied to purchase, as an actual settler, a half section of land, being half of section 48, block C3, E. L. R. R. Ry. Co. script No. 838, as his home section under the then existing law, and half of section 54, block C3, D. & P. Ry. Co. certificate 5, as additional land to half section 48. Both sections were situated in Donley county, Tex. At the same time he executed his obligation for the balance of the purchase money and paid one-fortieth of the purchase money. The lands were awarded to Williams on the above application and obligation by the Land Commissioner February 15, 1901. He also filed a like obligation for the same land, dated January 14, 1901. These last applications were marked rejected by the Land Commis-

---

sioner. The evidence shows that the interest on the Williams purchase has been regularly paid and accepted by the Land Office, and, in so far as that office is concerned, Williams' purchase is in good standing. On the 30th day of July, 1902, L. C. Barnes made his application to purchase the two half sections awarded to Williams, which were in proper form. The half section of 48 was applied for as his home section, and 54 as additional land. He made the required affidavit as to settlement on section 48. He also executed his obligation as required by law for the balance of the purchase money. These two applications by Barnes were filed in the Land Office August 1, 1902, after having been duly recorded in the county clerk's office of Donley county. These applications were indorsed by the Land Commissioner rejected January 20, 1903. The records show that Barnes tendered to the state, through its proper officers, the required amount of purchase money and the annual interest since that date, which have been by the Land Commissioner and State Treasurer rejected and returned to him. On the 16th day of January, 1904, J. B. Williams filed proof of occupancy, and on the same day the Land Commissioner issued his certificate thereof. It is agreed by the parties hereto that section 54 is within the five-mile radius from section 48.

[1] By the first assignment of error complaint is urged at the action of the trial court in refusing to instruct the jury to find for the appellant. By several propositions it is urged that Barnes was not an actual settler at the time he made his application to purchase, and that the evidence conclusively shows that fact, and for that reason the charge should have been given. It is also urged that Barnes failed to show that at the time he applied to purchase he had not purchased land aggregating four sections, and that there is no sufficient and competent evidence to show he was eligible to purchase; that, plaintiff having shown a prima facie title, it became the duty and Barnes was required to show such facts before he could recover or defeat the Williams title.

The application of Barnes was made July 30, 1902. The facts show that on the 27th day of July, 1902, Barnes and his two sons went onto the land, taking with them a wagon, some bedding, cooking utensils, and provisions. They commenced work on the land on the evening of their arrival, preparing the ground to sow some turnips, and during the days of the 28th and 29th of July they completed what they termed a half dugout, placing therein some framing timbers and covering it with, and placing around the walls, sheet iron. The dugout was about 10x14 feet and floored with boards of some kind. While the boys were working on the dugout, Barnes returned to town, got a cook stove and table, and brought and placed them in the dugout. At the time of filing by Barnes, his daughter was sick with slow fever, and had been for two or three weeks previous thereto, and his wife had been confined about the 21st of July, before the date of filing. Barnes stayed on the land himself part of the time, but returned to town after intervals to look after his wife and daughter, and as soon as they were able moved them on the land, which was about the last of the following August. He had previous thereto bought two lots in the town of Clarendon, which had a barn situated thereon, only partially floored. During the time he was constructing the dugout, his wife and two daughters lived in the barn. Soon after completing the dugout, they began work on a larger one and completed it. Shortly afterwards, a farm was broken out, fenced, another dugout put in, a house erected, and other improvements, such as lots, sheds, and barns, were placed on the land. Barnes and family have continuously resided upon the land since that date, making it their home, except one year, perhaps, 1906. The facts are sufficient to show that the intention of Barnes, while he was at work on the dugout, was to settle on the land and to make it the home of himself and family, and at that time he and a part of his family and household effects were on the land, and that in about a month all removed onto it and continued to reside upon the land. After constructing the dugout, Barnes went to the town of Clarendon before the county clerk on the 30th of July, who made his application to purchase, and has continuously since that date kept up a tender of the annual interest due on the land; which has been rejected by the Land Commissioner and State Treasurer.

The jury must have found under the charge of the court that, at the time Barnes made his applications to purchase, he had "in good faith settled thereon," and "that he desired it for a home." We do not think as a matter of law we can say there was no evidence supporting the finding. The cases cited by appellants (Busk v. Lowrie, 86 Tex. 128, 23 S. W. 983, and McWhorter v. Eriksen, 151 S. W. 624), are both distinguishable from this upon the facts therein and the statute construed by the court in those cases. In one there was nothing done but the piling up of some rock, and no actual occupancy thereof for some months afterwards. In the other, the wife went upon the land, when, by the act of 1905 (Acts 26th Leg. c. 103), under which the land was purchased, the applicant was required to actually settle in person. Therefore a settlement by the wife was held not a settlement in person. The applicant in that case was not on the land in person. Here the applicant was on the land in person, constructed an abode for a home before he applied, humble it is true, and continued to occupy the same continuously as a home. We find no law which requires all the members of the

applicant's family to be with him when he first settles on the land. The jury must, we think, be left some power in determining what acts on the land will constitute a settlement. The question of whether one is an actual settler on land as a home is one of fact and not of law, and, unless it is clear there is no fact authorizing the jury to so find, we do not believe we are authorized to say as a matter of law there was none. Chesser v. Baughman, 22 Tex. Civ. App. 435, 55 S. W. 132; Corrigan v. Fitzsimmons, 51 Tex. Civ. App. 444, 111 S. W. 793; Borchers v. Meade, 17 Tex. Civ. App. 32, 43 S. W. 300; Willingham v. Floyd, 32 Tex. Civ. App. 161, 73 S. W. 831.

[2] The act of 1901 (27th Leg. p. 292, § 3), under which Barnes applied to purchase, prohibited the Land Commissioner from selling "to the same party more than four sections of land, and all applications to purchase lands shall also disclose the prior lands purchased by the applicant from the state, if any, since the taking effect of this act, and the residence of the applicant at said time. And if it appeared therefrom or from the records in the Land Office that said applicant has already purchased land aggregating four sections since the taking effect of this act, his application shall be rejected." The application made by Barnes to purchase the two half sections, as we read them, comply with this requirement; but, as we understand the appellant, he contends that Barnes should have also shown that there was nothing in the records of the Land Office evidencing that his application was not rejected on account of his having purchased four sections. The record in this case shows that Barnes had recently moved from Wise county to Clarendon. The above act took effect April 19, 1901, and Barnes' file was made July 30, 1902. The record further shows that he owned two lots in the town of Clarendon at the time he applied for the two half sections. There is no testimony that he had ever filed on any other land. We have reached the conclusion that it was not incumbent on appellee Barnes to prove that he had not filed on other lands. His application was that the two half sections were the lands filed on by him. This application appears to have been on the form prepared by the Land Office requiring the applicant to state the land filed on by him since the passage of the act.

He was in possession of the land at the time Williams brought suit, holding the same under a claim of right. Had Williams been in possession under his award, then, if Barnes had sued for possession, it may be as contended by appellant that Barnes would have to prove all the necessary prerequisites to show that he was eligible to purchase. Under such circumstances, the case of Nowlin v. Hall, 66 S. W. 116 and 851, and like authorities, would be applicable. It is urged that, upon the proof of Williams' application,

award and payment of one-fortieth of the purchase money, the annual interest, and the certificate of proof of occupancy, appellant established a prima facie title. This is correct under the authority of the Supreme Court in this case. But that yet did not require Barnes to show an equitable title to the land in himself. He could defeat appellant's recovery by showing that Williams was not an actual settler. If that was shown, then appellant must fail. The jury, under the charge of the court, found Williams was not an actual settler. If they had found Williams was an actual settler, Barnes could not recover, had he shown that he had in every way complied with the law in regard to the purchase as an actual settler. The Supreme Court said in this case (Barnes v. Williams, 102 Tex. 444, 119 S. W. 89): "According to repeated decisions of this court and the Court of Civil Appeals, one who shows that his title consists of a purchase of school land which is in good standing and recognized by the officers of the state in the manner prescribed by the statute makes a prima facie case against an adversary who claims under a subsequent rejected application. When the latter contends that the elder sale was void, he must show the facts which invalidate it." Again, when this case was before the Supreme Court (Barnes v. Patrick, 105 Tex. 146, 146 S. W. 154), that court said: "When Williams instituted his suit against Barnes to recover the land, before the act of 1905 was passed, he put the validity of his claim under judicial investigation, and Barnes had a right to defeat his recovery, which would have adjudicated the rights of the parties. In such proceedings no affirmative action by the court was necessary declaring Williams' claim to be void or to remove any cloud on Barnes' title. The defeat of recovery by Williams would have settled the rights of the parties."

The opinion of the Supreme Court last above quoted was rendered while discussing the question of the necessary allegation in a cross-action by Barnes in order to defeat Williams' title. We think the Supreme Court has settled the issue; that is, if Williams was not an actual settler when he filed his application to purchase, he cannot recover, and that "a defeat of recovery by Williams" settles the rights of the parties. When Barnes went on the land and filed his application to purchase, he did so before Williams filed his proof of occupancy, and therefore the subsequent acts of the Land Commissioner did not affect the rights of Barnes, and, in so far as he was concerned, the settlement of Williams was a question for the adjudication of the courts. The Supreme Court said on the former appeal (102 Tex. 444, 119 S. W. 89, supra): "He (the Commissioner) may, and often must, pass upon the question involved merely for the purpose of determining his own course of action; but that action,

when taken, ordinarily has no conclusive effect on the titles upon which he thus incidently passes. These may still be asserted and adjudicated in the courts." In Barnes v. Patrick, supra, it is said: "Barnes had a right to defeat his (Williams') recovery which would have adjudicated the rights of the parties." How could he defeat the recovery? If Williams was an actual settler, there was nothing which could have been alleged or proven that Barnes did or could do that would defeat the recovery. In the last case it is said: "The answer clearly set out the defects in plaintiff's claim and the reason why the land should not have been awarded to Williams, which, if true, made the award void."

[3] Actual settlement by Williams was the crucial question in the case. When Barnes filed his application in the Land Office in the form prescribed by law, the law divested the Commissioner of the power to adjudicate the rights of the parties. It was then relegated to the courts for adjudication. The certificate of occupancy did not preclude Barnes. The filing of the application by Barnes as an actual settler before such proof, as we believe, had the effect of admitting evidence of nonsettlement by Williams. Forrester v. Berry, 35 Tex. Civ. App. 175, 79 S. W. 591. This suit was filed in December, 1904, charging Barnes with possession of the land, and the plea of not guilty admitted possession. As a muniment of title, appellant offered a certificate of proof of occupancy. This proof is shown and found by the jury to be false. Without this proof, Williams' title is void. How, then, can he be entitled to a judgment of ouster upon a void title against a party in actual possession? The plaintiff must recover on the strength of his own title in trespass to try title, and cannot recover because the defendant has no title. Admitting in this case that the introduction of the certificate of occupancy made a prima facie case, did not the introduction of the application before the issuance of the Land Commissioner of that right or power? Can it be said, when that fact is shown, that the certificate is evidence of occupancy? The filing of the application itself challenges the right of the plaintiff. The Commissioner, it appears to us, has no power or right thereafter to adjudicate the question, and therefore force a defendant in possession to prove a perfect equitable title before he can prove that the plaintiff's title is void. If, as it appears to be the holding of the Supreme Court in this case, the burden shifted to the defendant to show the invalidity of plaintiff's title, that court did not hold before defendant could make that proof he must also show he had a perfect equitable title.

In the case of Clark v. Hills, 67 Tex. 149, 2 S. W. 360, the effect to be given to a prima facie title as to the burden of proof is discussed at length. The court there said: "That a party does not shift to his adversary the burden of proof by making out a prima facie case is clear from what we have said, and is a well-settled principle. * * * His case must be disproved, but, when proof having this tendency is produced, it then becomes a question whether, upon the whole evidence, a prima facie case has been successfully met by the adverse party. If it appears that the preponderance of testimony is not in favor of the party having the onus, the verdict should be against him. If the testimony is evenly balanced, he failed to establish the issue, but has left it doubtful whether he has sustained it or not, and that doubt must inure to the benefit of his adversary."

Barnes being in possession under a claim of right, he had the right to show that Williams' title was void for nonsettlement, and if he did so, in so far as the plaintiff is concerned, he had the right to retain possession. This, we think, is substantially the holding of the Supreme Court on the two occasions when this case was before it. We therefore overrule the first assignment of error.

[4] The second assignment complains of the fourth paragraph of the court's main charge. The charge is: "Bearing in mind the foregoing instructions, if you believe from a preponderance of the testimony that the defendant L. C. Barnes, at any time prior to the 30th day of July, 1902, in good faith, actually settled upon half section No. 48, in controversy, with a bona fide intention of purchasing it and making his home thereon, and you further believe from a preponderance of the evidence that he was an actual settler in good faith and actually residing upon said half section 48 at the time he made his application to purchase the same on the 30th day of July, 1902, and that he made such application to purchase in good faith for the purpose of making the land his home, and you further find and believe from the evidence that J. B. Williams had not been and was not an actual settler upon said half section No. 48, in good faith, with the bona fide intention of making it his home at the time he made his application to purchase the same from the state on the 12th day of January, 1901, you will find for the defendant L. C. Barnes and return your verdict accordingly." It is urged that the charge authorized a recovery by Barnes "without a finding that he had actually settled upon and was in good faith residing upon the land in controversy as a home at and prior to the time he made his application." The statute under which Barnes applied is that the purchaser shall make an affidavit "that he desires to purchase the land for a home and has in good faith settled thereon." The court followed substantially the language of the statute and required the jury further to find "that he was an actual settler in good faith, and actually resided upon said land." He required the jury to further find that he made the application "to purchase in good faith for the

purpose of making the land his home." We do not think the charge subject to the criticism offered by appellant. By the fifth paragraph the court repeated his charge as to Barnes' required settlement and further told them they could not find for defendant, even if Williams had not actually settled on the land. Again the jury are told, unless they found from a preponderance of the evidence that Williams was not an actual settler, they must find for the plaintiff, notwithstanding Barnes may have been an actual settler, and then again repeats the proposition in a different form. We do not think the appellant has any just grounds for complaint at the charge of the court. As stated by us heretofore, we think the only question for the jury to find in order to render a verdict for defendant was to find that Williams was not an actual settler on the land when he made his application. If they found that fact against plaintiff, his title was void, and he could not recover. If they found for him on the issue of settlement, it would make no difference what Barnes did or did not do, Williams would be entitled to recover. This assignment is overruled.

The third assignment is overruled for the reason set out by us in discussing the facts under the first assignment.

[5] The fourth assignment complains of the ninth paragraph of the court's charge, which is as follows: "The affidavit of proof of three years' occupancy by J. B. Williams of section 48, and the certificate of the Commissioner of the General Land Office, to the effect that such proof had been made, read in evidence before you, were admitted in evidence for the purpose only of showing that such proof had been made, and they are not to be considered as proof of such occupancy." We think the limitation was a proper one under the evidence in this case. After Barnes' application was filed in the Land Office, as we understand the proof of occupancy was not proof thereof in a trial of that issue in the court. Our Supreme Court in this case held that such proof was ex parte. To the same effect is White v. Watson, 34 Tex. Civ. App. 169, 78 S. W. 237, in which case the court held the certificate of proof of occupancy was not admissible in evidence.

[6] The fifth assignment complains of the action of the court in admitting in evidence the proof of occupancy by Barnes and the affidavit of two compurgators. The court limited the purpose of the evidence to the proof only that such certificate had been made, and the jury were instructed they were not to consider it as proof of occupancy by Barnes. Under the issue as made and tried in the lower court, the admission of the evidence as limited by the charge did not injure the appellant (article 4218j, Rev. St. 1895; Pohle v. Robertson, 102 Tex. 274, 115 S. W. 1166); but, as we view the issue in the case, it was harmless. It at least tended to show on the part of Barnes that he asserted a claim of right under the law and kept it up.

We overrule the sixth assignment of error. We think the trial court gave the requested charge substantially in the main charge of the court.

The seventh and eighth assignments are overruled for the reason that the charges are on the weight of the evidence and are argumentative and, as we view the issue, were not applicable to the case, and, in so far as proper to be charged under the issues submitted by the trial court, the main charge given covered the requested instructions.

[7] The ninth assignment will be overruled. Appellant requested the trial court to charge that, if Barnes settled on the land and abandoned it for any length of time as a home, he could not recover. The evidence indicates that Mrs. Barnes some time in 1908 moved into town to send the children to school, and that the father moved them back to the land some time afterwards; also that one of the boys rented a farm in Hall county in 1904 or 1905, and the father passed back and forth between the rented places and the land in question. The evidence indicates that some four years after Barnes settled on the land the old house was sold, but it also indicates that a new one was built "right afterwards." If this raised the issue of abandonment, we think the court properly refused the charge for the reasons given heretofore. It will be seen all the acts occurred after the suit was filed, unless it was the renting of the land in Hall county. The tenth and eleventh assignments are overruled for the same reason.

[8] The twelfth assignment complains of the action of the court in refusing the sixth specially requested charge to the effect that if Williams was an actual settler on the land when he made his application to purchase, and thereafter he left and remained away through a well-grounded fear of death or serious bodily harm, his rights, in such event, would not be prejudiced. This charge appears to have been requested on the ground that Barnes and his boys testified they did not see Williams on the land except one of the boys saw him there on two occasions, and Williams testified that, acting under the advice of counsel, he remained away a considerable portion of the time after Barnes jumped it and after having a difficulty with Barnes on the street in Clarendon. We do not think the facts raised the issue, but, if they did, the charge of the court eliminated any injury. The court instructed the jury: "If J. B. Williams had actually settled upon section 48 of the land in controversy, and was in good faith residing thereon as his home at the time he made or caused his application to purchase to be filed with the proper authority, it matters not, so far as this suit is concerned, whether he continued to reside thereon or not." We do not see

what more appellant could ask at the hands of the court, unless it was to give a peremptory charge as requested by instruction No. 1. Requested charge No. 9 of which complaint is urged because of its refusal, was given by the trial court in the main charge in almost the exact language of the charge requested. The above assignments are therefore overruled.

The fourteenth, fifteenth, and sixteenth assignments are overruled. The court fairly presented to the jury the question as to the settlement of Williams and Barnes. It is urged under the sixteenth assignment that Barnes cannot recover for the reason set out under the first assignment (that is, that the evidence is conclusive that Barnes was not an actual settler on the land when he made his application, and that there is no evidence that he had not filed on four sections of land before he made his application to purchase); that it conclusively shows that he had not continuously resided upon the land since making the application. We do not agree with appellant that there was no evidence of settlement by Barnes or that the testimony conclusively shows that he had abandoned the land. The trial court as to the law evidently adopted the theory of appellant on the main issue in this case, as evidenced by his charges. When this case was before this court on a former appeal, one of the questions presented was the refusal of the trial court to admit evidence to the effect that Williams was not a settler on the land when he applied to purchase. This court, on a motion for rehearing, affirmed the judgment of the district court which had been rendered against Barnes. A careful examination of the opinion of the Supreme Court, rendered by Judge Brown, we think clearly indicates that Barnes' answer showed that the award to Williams was void. It was void on the ground that Williams had not settled. If he had made an actual settlement, then Barnes had no right whatever. The contention, however, appears to be that Barnes had to first show a clear equitable title to purchase the land before he could show Williams' award to be void. The Sixth Court of Civil Appeals (111 S. W. 432), in discussing this case when before that court, rendered a judgment against Barnes and states that Williams' title, "could be questioned only by one having a better right and who, upon a showing of the truth of the facts attending the application to purchase, to the effect that a fraud had been perpetrated, would be entitled to priority in the award of the land over the appellant" (Williams). It is true the court based its opinion for rendering judgment against Barnes mainly on the ground that there had been issued a certificate of proof of occupancy, and the question here presented was not then involved. The Supreme Court, in granting the writ of error and in reversing the

case, based its opinion on that proposition and held substantially the certificate was not conclusive against Barnes. The Supreme Court then certainly held that Barnes, under the facts presented, could attack the settlement of Williams, holding that Barnes must show the "facts which invalidate it."

[9, 10] The line of authorities from Logan v. Curry, 95 Tex. 664, 69 S. W. 129, down, establish the effect of the certificate by the Commissioner as evidence. If given before an intervening application, it is conclusive; if given after, it is rebuttable, if in fact it then has any probative force. If given after the Commissioner is deprived of power to determine the question of settlement, the law then requires an adjudication by the courts to settle the right. When the courts are resorted to, the rules governing its proceedings must control the trial. Williams resorted to trespass to try title. All the courts in this case have recognized Barnes' right to assail the settlement made by Williams. They recognize that the certificate is not conclusive; at most the recognition of Williams' title by the officers of the state made a prima facie case. If Williams had not settled the sine qua non by the state, then one of his prima facie links in his title is shown to be a fraud on the state and his title is void. The plaintiff in trespass to try title must recover on his title and not that his adversary has no title. We have never understood it to be the rule that a defendant admittedly in possession of land is required to show a perfect equitable title before he will be permitted to assail the title of the plaintiff. In certain cases he may show an outstanding title to defeat the plaintiff, and that too when he has no connection with it. Whether he could do so in this case we do not decide, but Barnes does show an application to purchase as an actual settler and proof tending to show he was such, which under the charge of the court the jury found sufficient. He was on and in possession of the land under a claim of right. That right the Land Commissioner on false proof could not impair, whatever it was; and, when the plaintiff sought to recover the land, he must show, or the evidence must show, a better right. If his right is shown to be void from his evidence or from evidence produced by the defendant, he cannot recover. It may be that the defendant's right would not support a recovery if he was seeking as a plaintiff to recover on it. Yet he will not be deprived of it as a defensive weapon, when his rights are assailed.

As to Williams' settlement, there is testimony in the record supporting the finding of the jury that, when he made his application to purchase the land, he in fact had made no settlement thereon; that the house, or shack, as termed by some, was not placed on the land until something like a month after making the application; that he in fact

never actually settled or lived on the land; and that it was never his intent or purpose in good faith to settle on it as a home.

This case has been tried before several juries with the same result as upon this trial when they were permitted by the trial court to pass upon the facts. It has twice been rendered against Barnes by two separate Courts of Civil Appeals, and the Supreme Court has each time reversed the judgment of those courts. The trial court upon the last trial has compelled Barnes not only to prove Williams was not a settler but also to prove that he (Barnes) was an actual settler in good faith, with the intention of making it his home. To now require him, in order to recover, to negative every possible reason the Land Commissioner may have had in rejecting his application, and to also show that when his wife took the children to town to send to school, or that when his boy worked or rented a farm and Barnes went back and forth between the places, he had not thereby abandoned the place as a homestead, we think would be placing on him an intolerable burden. It would be forcing him in the attitude of the plaintiff, and not the position of a defendant, where the pleadings and the law placed him. We believe the case should be affirmed, and it is accordingly so ordered.

Affirmed.